### EMBEZZLEMENT BY AN OFFICER OF A CORPORATION.

Court of Appeals for Hamilton County.

CARLOTTA THOMPSON BROWN v. STATE OF OHIO.*

Decided, March, 1914.

*Criminal Law—Conversion of Securities by Officer of a Brokerage Concern—Guilt Personal and Not Official—When Conversion of Securities Constitutes Embezzlement.*

1. When an officer of a corporation in the transaction of its business violates a criminal statute, such as that relating to embezzlement, his act in that respect is personal and not official, and he is subject to the same responsibility for an act performed through the instrumentality of a corporation as where the act is accomplished by any other means.

2. Where securities are left in the hands of a broker for sale, and the proceeds from such sale are appropriated by the broker for his own use and benefit, the crime so committed is embezzlement.

*Cogan, Williams & Ragland,* for plaintiff in error.
*Thos. L. Pogue,* Prosecuting Attorney, contra.

JONES (Oliver B.), J.; JONES (E. H.), J., concurs; SWING, J., dissents.

This is a proceeding in error taken from the judgment of the court of common pleas, entered October, A. D., 1913, term of said court, adjudging the plaintiff in error guilty of the crime of embezzlement. The indictment returned jointly against the defendant and her husband, Henry A. Brown, was founded upon the charge of embezzlement, and alleged that the plaintiff in error was the agent and employee of the prosecuting witness, Fred Schroth, and that as such agent she embezzled and appropriated to her own use moneys belonging to Fred Schroth, which had come into her possession by virtue of her employment as the agent of Schroth.

*Motion to require the Court of Appeals to certify its record overruled, April, 1915.

The record shows that at the instance or request of the husband of plaintiff in error, Henry A. Brown, who was an officer of the Thompson-Brown Company, two hundred shares of United States Steel Company preferred stock belonging to Fred Schroth, and five shares of the same stock belonging to Elmer Schroth, were by him delivered to the defendant below as president of the Thompson-Brown Company and receipted for in the name of said company by her as its president, and that the stock was sold and the net proceeds of same, $22,007.77, was received by the defendant and deposited in the name of said company in the Fifth-Third National Bank of Cincinnati, and all checked out and used by her to pay her own obligations and the obligations of the Thompson-Brown Company.

The stock was received and sold on March 31, 1913, and was at once forwarded to New York attached to a draft through the Fourth National Bank for the total amount of the sale, and the Fourth National Bank, on so receiving the certificates of stock to forward, at once gave to plaintiff in error in person its cashier's check for $15,000 to the order of the Thompson-Brown Company on account of such draft and stock, and she endorsed that check in the name of the company by herself, as president, and placed it in the Fifth-Third National Bank in the account of the Thompson-Brown Company, and immediately began to check out the money to pay the obligations of herself and of her company. And on April 4, 1913, after it had received notice of the acceptance of said draft on New York, the Fourth National Bank completed the payment for such stock by giving its cashier's check to the Thompson-Brown Company for the balance of $7,007.77, which was also deposited to the credit of that company in the Fifth-Third National Bank, and plaintiff in error checked against that amount for her own and her company's obligations until the entire amount was so used.

The record shows that the Thompson-Brown Company was hopelessly insolvent at that time, the amount of its delinquency on April 4, 1913, being in excess of $69,000; that plaintiff in error was the president and in the active management of the company, and signed every check of the company constituting the

embezzlement of these funds as charged in the indictment, and that there was then practically no money in its account in the Fifth-Third National Bank other than that consisting of the proceeds of the sale of the Schroth stock, the account showing that all other deposits were less than $340. The use of the money can not therefore be considered as an innocent mingling of funds by a broker in the usual course of business. The record further shows that plaintiff in error when questioned on behalf of Schroth, who was demanding his money, claimed that it had not yet been received by her or her company, making one false statement after another for the purpose of delaying action, when in fact she had then not only received the money, but had placed it in bank to the account of her company and had checked it all out of bank and used it for her own purposes.

It is urged on behalf of plaintiff in error that the court erred in admitting testimony disclosing transactions between witnesses for the state and the Thompson-Brown Company, claiming that the indictment contained no allegation sufficient to apprise defendant that she would be held to answer for the acts of the Thompson-Brown Company.

There can be no question of the correctness of the rule laid down in *Dillingham* v. *State,* 5 O. S., 280, and in *DuBrul* v. *State,* 80 O. S., 53, requiring an indictment to cover all the material facts necessary to be proved with such certainty and precision as to reasonably apprise the accused of what he may be expected to meet and be required to answer. But we do not understand this rule to require that evidence should be set out in the indictment. If the act charged against the defendant below was done by her as president of a corporation it was no less an individual act, and she would be punishable only for her act as an individual and her official or corporate relations are only incidental and not so material as to become a necessary averment of the indictment. *Barnett* v. *State,* 54 Ala., 579, 584-5.

Counsel for plaintiff in error in effect claim that if any embezzlement of the funds of the prosecuting witness was shown, that it was the act of the corporation and not that of plaintiff in error.

A thorough discussion of the necessary elements constituting the crime of embezzlement is found in the opinion of Wilkin, J., in the case of *State of Ohio* v. *Baxter,* decided by the Supreme Court February 3, 1914 (Ohio Law Reporter, March 9), in which he quotes from Bishop's New Criminal Law, as follows:

"The gist of common law larceny is the felonious 'taking' of what is another's, with the simultaneous intent in the taker of misappropriating it. But in the statutory embezzlement there is no felonious taking, for the thing comes to the servant by delivery from the master or a third person. So that the question now is, by what act, after it is received, does the servant commit the embezzlement? * * *

"If the servant intentionally does with the property under his control what one must intend to do with property to commit larceny of it, he embezzles it, while nothing else is sufficient. Or assuming the needful criminal intent to exist, he must and need only do what in our civil jurisdiction is deemed conversion, defined to be any dealing with the thing which impliedly or by its terms excludes the owner's dominion. To illustrate, if the servant instead of delivering the property to his master or another, as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise wrongfully diverts its course towards its destination, to make it his own, he embezzles it. Yet much of even this is, when accurately viewed, rather evidence than the offense itself. For, to constitute the offense it is not necessary there should be a demand for the money alleged to be embezzled, or a denial of its receipt or any false account, * * * or refusal to account." Sections 372, 373. * * *

"In strictness of language there are in larceny two intents: namely, to commit the asportation by trespass, and to make the felonious misappropriation of the thing stolen. Yet commonly and practically we mean my this term the latter. It is in this sense that the word is in the present sub-title employed. It means the purpose to deprive the owner of his ownership in the thing taken; and whether or not for some advantage to the trespasser, or as otherwise expressed, for lucre, is one of the purposes to consider."

It will be seen therefore that the criminal intent to convert the property, which is a necessary element of the crime of embezzlement, can not be had by a corporation; and as the crime is purely statutory, it is not one for which a corporation can be held.

The case of *Ebert* v. *State of Ohio*, 2 C.C.(N.S.), 537 (aff. 71 O. S., 476), is directly in point to this effect.

So far as the Thompson-Brown Company is concerned as instructive case is that of *State, ex rel*, v. *Standard Oil Co.*, 49 O. S., 137:

Syl. 1. ''That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business and those who do business with it; but like every other fiction of law, when urged to an intent and purpose not within its reason and policy, may be disregarded.''

When an officer of a corporation in the transaction of its business violates a criminal statute, such as that relating to embezzlement, his act in that respect is personal and not official. He is subject to the same responsibility for such an act done by him through the instrumentality of a corporation as though it were accomplished by any other means.

A Wisconsin case, in which an embezzlement charge against two of the officers of a corporation is considered in an able opinion cited in the brief of the prosecuting attorney, appears to be directly in point. We quote paragraphs 1, 2, 3 and 4 of the syllabus. *Milbrath* v. *The State*, 138 Wis., 354:

''1. A corporation exists only in contemplation of law, and the legal fiction that it is a separate entity, though necessary for many purposes, can not be urged to an intent and purpose not within the reason and policy of that fiction.

''2. A person charged with a crime will not be heard to say in justification that he committed the act in his official capacity as officer of a corporation; nor to assert that acts in form corporate acts were not his acts merely because done by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose.

''3. One may convert money of another to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management and of which he is a stockholder and officer in charge; and the fact that the benefit which he receives is not equal to the whole amount of the money is not material.

"4. Defendant and his partners in a loan and real estate business who had loaned on real estate security certain money entrusted to them for that purpose, organized a corporation to carry on the business. They were the sole and controlling stockholders and officers therein, and turned over to it all of the assets and business of the firm. Defendant was president. The money above mentioned was repaid at the office of the corporation in defendant's presence, was mingled with funds of the corporation, and was retained and used by it. The corporation was then insolvent, and defendant's account with it was overdrawn and continued so to be. The amount was credited on the books of the corporation to the owner of the money, but, for the purpose of concealing from her the fact that the principal had been repaid, the corporation, with defendant's knowledge, continued to pay interest to such owner as if the loan were still outstanding. Afterwards the corporation was adjudged bankrupt. *Held*: That the corporation was a mere instrumentality through which defendant had embezzled the money and converted it to his own use."

The case of *Ford* v. *State*, 11 C.C.(N.S.), 324 (aff. 80 O. S., 722), is also instructive the first clause of the syllabus is as follows:

"1. An individual member of a partnership who received money as an agent and secreted it with intent to embezzle and convert it to the use of the partnership may be convicted under Section 6842, Revised Statutes. The fact that the money is received by him as a member of a partnership makes no difference."

It is also urged by plaintiff in error that no contract of employment or agency is established between defendant and the prosecuting witness. If it be conceded that the corporation, the Thompson-Brown Company, was the original agent employed by Schroth to sell his stock and that he had no acquaintance with or knowledge of the defendant below, it must be admitted that he realized that the corporation must necessarily act by its officers or employees, and while defendant may have first obtained possession of the stock as an officer of the company, she at the same time became an agent of Schroth acting for him as well as the company, and if she feloniously appropriated its proceeds she

did so necessarily as an individual for her own benefit and that of the company. Such an appropriation would either constitute the crime of larceny or embezzlement, and as her possession was lawful in its inception, it becomes the latter crime and not the former.

Directly in point is the language of the court in *State* v. *Pohlmeyer*, 59 O. S., at page 496:

"The statutory definition of the offense regards the actual relation of the agent, servant or employee, and not the legality of the mode in which it was created nor the extent of the authority conferred. And the rule that one who receives money or any other thing of value in the assumed exercise of authority as agent for another, is estopped thereafter to deny such authority, applies in criminal prosecutions as well as in civil actions."

As a further answer, the language of the court in *State* v. *Carter*, 67 O. S., 437-8, might also be quoted.

It is further urged that the court below committed error in excluding the certified copy of a petition filed in the United States District Court of the Southern District of Ohio by Fred Schroth against the Thompson-Brown Company, in which he sought to recover from it the proceeds of said stock.

We do not regard this exclusion as error. Notwithstanding the fact that this fund had been embezzled, there would certainly exist a civil liability for it on the part of the Thompson-Brown Company, and possibly on the part of defendant below, and any effeort made by the owner to enforce its recovery could not affect the crime of its embezzlement or its misappropriation. The civil liability is undoubted regardless of the crime, and after the crime of embezzlement has been committed the repayment of the money does not undo the offense. *State* v. *Baxter*, *supra*.

Objections are also made to the refusal to give certain special charges and to certain parts of the general charge. A careful consideration of these objections fails to find any prejudicial error.

The judgment is therefore affirmed.

In the opinion of Swing, J., the record discloses that the act of the accused constituted larceny and not embezzlement, and for that reason he dissents.