## PROOF OF AN INTENTION TO TRADE IN MARGINS.

### Court of Appeals for Franklin County.

OTIS & HOUGH v. JOSEPH EYLAR THOMPSON, AN INFANT, BY JOHN EYLAR, HIS NEXT FRIEND.

Decided, December, 1914.

*Action for Money Lost Trading in Margins—Mutual Intention Not to Complete the Trades—Shown by Circumstantial Evidence—Evidential Interrogatories—Charge of Court.*

1. In an action to recover money lost in marginal or wagering transactions in stocks, it is competent to prove that back of the form in which the transactions were clothed there existed a mutual intention not to complete the transactions by payment in full and delivery, but to rest on the rise and fall of the market values.

2. The purchaser having testified that in all the transactions except four (in which she actually received the stock) it was her intention to deal in margins only, evidence of a similar intention on the part of the defendant brokers, sufficient to send the case

to the jury, is afforded by a showing of purchases by this customer of stocks of the value of more than $200,000, notwithstanding she was in distress financially and frequently had difficulty in meeting the margins she was called upon to pay.

*W. O. Henderson, Karl E. Burr* and *Thomas Kirby, for* plaintiff in error.

*E. G. Lloyd, John C. Shea* and *John Eylar,* contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

The original action in the court of common pleas was brought by Joseph Eylar Thompson by next friend to recover money lost by Margaret Eylar upon marginal or wagering transactions in stocks.

Upon trial the plaintiff recovered a verdict and judgment for $2,500. The case is in this court upon petition in error.

The counsel for plaintiff in error very earnestly contend that all the transactions involved are legitimate, and that there is no basis in the evidence for a recovery. The material evidence offered by the plaintiff consists of the testimony of Margaret Eylar as to the nature of the transactions, together with certain books, checks, receipts, letters, etc., connected with and forming parts of the various transactions.

The plaintiff, as part of his case in chief, also called as a witness Frank L. Griffith, manager of the Columbus branch of the defendant's business, to identify certain documents. Upon cross-examination, Griffith testified in substance that all the transactions with Mrs. Eylar were *bona fide* purchases and sales of stock.

At the conclusion of plaintiff's testimony the defendant moved for a non-suit. This was overruled.

The defendant thereupon offered the testimony of Frank L. Griffith in detail as to the transactions, together with various records and documents connected with and forming part thereof. There was also other evidence which need not be alluded to in detail.

Upon the conclusion of all the evidence the motion of the defendant for a non-suit was renewed and again overruled.

The testimony of Mr. Griffith in connection with the books and bills of purchase and sales tends to show that the transactions were regular and legitimate purchases and sales of stock. And if that were the only evidence to be considered, it would be quite clear that no liability should be sustained.

It is, however, clearly established by adjudications in this state, and sustained by manifest public policy, that the mere form of the transaction is not conclusive. *Kahn, Jr.,* v. *Walton,* 46 O. S., 204; *Lester* v. *Buel,* 49 O. S., 240.

It is therefore competent to show that back of the form in which the transaction is cloaked, there existed a mutual intention of the parties not to complete the transaction by payment and delivery of the stock, but to rest merely upon the payment of margins and thereby speculate upon the rise and fall of the market values.

Margaret Eylar testified that in all the transactions (except in four instances when she actually received the stock) her intention was to deal in margins only.

The evidence of Mrs. Eylar was, therefore, sufficient to raise an issue as to her intention. It is insisted, however, that there was a total failure to prove that such intention was mutual or even that Otis & Hough knew of Mrs. Eylar's purpose or consented thereto.

It may be conceded that it was a necessary part of the plaintiff's case to prove a mutual intention of both parties to deal in margins only, and not to complete the transaction by the final delivery of the stocks. It is, therefore, quite important to determine whether there was sufficient evidence, either direct or circumstantial, to justify the submission of the case to the jury.

There were two transactions on "short sales," but as these involved small amounts and could not sustain the entire judgment they may be ignored except for their evidential value upon other transactions.

We, therefore, revert to the main and important question in the case, whether there is sufficient evidence tending to show that Otis & Hough intended that these transactions should be upon

margins only and not be completed by the final delivery of the stock.

The circumstances that in four instances representing about forty shares, stock was actually delivered, tends to support the testimony of Mr. Griffith.

Against this circumstance, however, is the long list of transactions involving something over four thousand shares of stock of different corporations of a purchase value of something over $200,000, which appears to have been bought and sold without actual delivery of the stock and upon small cash deposits or payments in a manner somewhat similar to the usual and ordinary case of marginal dealings. To these circumstances may be added the testimony of Mrs. Eylar to the character of the transactions and the fact that Mr. Griffith spoke of these cash payments as margins and called upon her when the stock market "slumped" for more money to keep up the margins. The financial situation of Mrs. Eylar is a circumstance tending to corroborate her testimony and to repel the idea that she intended to complete these extensive purchases of stock, and we think it was an inference capable of being drawn by the jury that the representatives of Otis & Hough, after having dealt with her for a considerable time, knew more or less of her financial affairs. It is also an inference capable of being drawn from the testimony that she was in financial distress when she reluctantly put up her Missouri Pacific stock to make her account with Otis & Hough good, and also that she was again in financial distress when she put up the two five hundred dollar checks of her uncle, Judge Eylar, to protect her account. The known difficulty and distress of Mrs. Eylar in keeping up margins might justify an inference that Otis & Hough knew of her inability to complete the purchases. The letters of Otis & Hough in respect to her account, the receipt of money from time to time generally upon her account and the deposit of the Judge Eylar checks "to be used only when account requires it" are consistent with and tend to corroborate the testimony of Mrs. Eylar as to the character of the transactions. We, therefore, hold that there was sufficient evidence tending to show that

these transactions were not legitimate sales to justify the case being submitted to the jury.

It is contended that the trial court erred in refusing to give certain charges requested before argument.

We find, however, that the court gave certain special charges requested by the defendant and refused others. Those given sufficiently covered the elements of the case involved in all the charges and it would not have been proper for the court to have repeated the same propositions. The court was justified in refusing the other charges for this reason alone.

It is specially urged that special request No. 1, in respect to stocks purchased before the period of recovery under the statute of limitations, was improperly refused. We think that this request was not strictly correct and that if it had been given, it would have entirely eliminated consideration of the loss of the Missouri Pacific stocks which, while purchased before the period allowed for recovery, were deposited during that period to make good Mrs. Eylar's account and were lost. The law upon this subject was correctly and fully given in special request No. 5, and authorized a recovery of the value of the Missouri Pacific stock, if actually put up and lost during the period of which recovery was allowed.

Special objection is also made to the following language in the general charge:

"But such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer."

It is contended that this was at least misleading, if not improper, because it prescribed an unnecessary burden as to the validity of the contract. While these references might have been more fortunately expressed, we are of opinion that under the entire charge the jury could not have been misled. The special charges before argument and the scope of the general charge clarified these expressions and made the court's charge sufficiently definite.

The defendant requested the submission of the following interrogatories to the jury:

"1.   Did Charles A. Otis and Addison Hough in any of the transactions had between them and Margaret A. Eylar gain any profit thereby other than their brokerage commission and interest on deferred payments.

"2.   In the event that special finding No. 1, is 'yes' then state in what transactions, at what times and in what amounts such profits were gained."

It is mandatory upon a trial court to submit, when requested, interrogatories the answers to which will establish ultimate and determinative facts, but not such as are only of a probative character.   *Gale* v. *Priddy,* 66 O. S., 400.

We think the facts called for by those interrogatories were simply evidential and not ultimate and controlling.   The interrogatories were, therefore, properly refused.

This case is no doubt an important one, particularly to the defendants.   But under the statutes of our state and the decisions of our Supreme Court as to the nature and character of the proof, we have reached the conclusion that the evidence as to these particular transactions was of such a character as to justify the submission of the case to the jury, and that the evidence depends largely upon the credibility of the witnesses is not so manifestly contrary to the verdict and judgment as to justify a reviewing court in disturbing them.

Finding, therefore, no prejudicial error in the record, the judgment is affirmed.