NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2751
_____

MUSTAFA ABUOMAR,

Appellant

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
VINCE MOONEY; EDWARD BAUMBACH; DENNIS BRUMFIELD;
THEODORE BENZA; KIPPLE, (first name unknown)

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. Civil Action No. No. 4-14-cv-01036)
District Judge: Honorable Matthew W. Brann

_____

Submitted under Third Circuit LAR 34.1(a)
on March 20, 2018

Before:  SMITH, Chief Judge, HARDIMAN and ROTH, Circuit Judges

(Opinion filed: November 2, 2018)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

For nearly twenty years, Mustafa Abuomar served as the imam at State Correctional Institution Coal Township (SCI Coal Township), a correctional facility in Northumberland County, Pennsylvania. He brought suit against the Commonwealth of Pennsylvania Department of Corrections, the Superintendent of SCI Coal Township, and various Corrections Officers and employees at the facility, alleging that, while investigating allegations of impropriety at SCI Coal Township—allegations propounded by Abuomar himself—defendants violated his constitutional rights and inflicted other wrongs on him. In total, Abuomar asserted ten claims against defendants, including conspiracy to interfere with his civil rights under 42 U.S.C. § 1985 (Count I); a Fourth Amendment claim (Count II); a Fourteenth Amendment substantive due process claim (Count III); hostile work environment claims under Title VII of the Civil Rights Act of 1964[1] and the Pennsylvania Human Relations Act (PHRA) (Counts IV and VI);[2] retaliation claims under the same statutes (Counts V and VII); and state law tort claims for battery, intentional infliction of emotional distress, and false imprisonment (Counts VIII, IX, and X).

The District Court granted summary judgment to defendants on all ten claims. On appeal, Abuomar abandons his conspiracy claim, but he appeals the grant of summary judgment as to every other claim. For a number of the reasons underlying the District Court's decision, we will affirm.

---

[1] 42 U.S.C. 2000e *et seq.*
[2] 43 P.S. §§ 951–963.

I.

In January 2014, Abuomar filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Corrections Officer Theodore Benza had directed ethnic and religious slurs at him.

Subsequently, Abuomar brought the present suit with claims premised primarily on the events of March 5, 2014. According to the undisputed facts, in the weeks leading up to March 5, Superintendent Vince Mooney had learned of allegations—advanced by Abuomar—of hostile and violent conduct by Deputy Superintendent Michael Miller.[3] Mooney instructed Abuomar's immediate supervisors, Chaplaincy Director Aaron Duncan and Inmate Correction and Classification Manager Linda Chismar, to obtain a written statement from Abuomar that detailed his allegations against Miller.[4] Duncan and Chismar approached Abuomar on March 5, 2014, and Abuomar declined to give Chismar and Duncan such a statement. In response, Chismar contacted Mooney who pressed Abuomar for a written statement. Abuomar continued to demur.[5] Moments later, Major Edward Baumbach and Major Dennis Brumfield confronted Abuomar and asked that he see Mooney in his office.[6]

In his office, Mooney continued to demand a written statement.[7] Abuomar eventually proceeded to a training room where he dictated a statement.[8] Though

---

[3] App. 60-61, 112.
[4] App. 61, 112.
[5] App. 62, 113.
[6] App. 63, 113.
[7] App. 66, 114.
[8] App. 67.

dissatisfied with the lack of specificity in the statement, Mooney then permitted Abuomar to leave the facility for a previously scheduled medical appointment.[9]

Abuomar alleges that, during this episode, his constitutional rights were violated and he was subjected to intentional torts.

## II.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]

We review the District Court's grant of summary judgment *de novo*, applying the same decisional principle.[12]

## III.[13]

Count II:  Fourth Amendment Claim

Qualified immunity shields government officials from constitutional claims and money damages, unless a plaintiff can establish that the official violated a statutory or constitutional right, and that the right was "clearly established at the time of the

---

[9]  App. 68, 114.
[10] FED. R. CIV. P. 56(a).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[12] *See, e.g.*, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1530 (3d Cir. 1990).
[13] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and this Court has jurisdiction under 28 U.S.C. § 1291.

4

challenged conduct."[14]  As the Supreme Court recently reiterated, "clearly established law should not be defined at a high level of generality," but must instead "be particularized to the facts of the case."[15]  The doctrine is designed to "give[] government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law."[16]

The relevant inquiry in this appeal, framed with particularity, is whether an employee's supervisor violates a clearly established Fourth Amendment right by directing the employee to cooperate with an internal investigation into allegations the employee has raised, where the employee was permitted to leave for a previously scheduled appointment despite cooperating only partially.  Abuomar offers no authority for the proposition that such a Fourth Amendment right was clearly established.  To the contrary, Supreme Court precedent, specifically, *I.N.S. v. Delgado*,[17] undercuts the existence of such a right.

In *Delgado*, the Supreme Court held that factory employees were not detained or seized under the Fourth Amendment when they were questioned about their citizenship by Immigration and Naturalization Service (INS) agents, while other agents manned the factory's exits.[18]  To buttress its holding, the Court observed that employees typically assume certain restrictions at work voluntarily; those restrictions on an employee's

---

[14] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[15] *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *see also L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016).

[16] *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

[17] 466 U.S. 210 (1984).

[18] *Id.* at 218.

freedoms, without more, are not detentions or seizures.[19] Further, the Court held that an employee has not been seized under the Fourth Amendment "[u]nless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded [to questioning]," and that such circumstances were not present in *Delgado* even though INS agents were stationed at the factory's exits.[20]

In light of the high bar set by *Delgado* and Abuomar's freedom to leave for a previously scheduled appointment, defendants' challenged conduct did not violate a clearly established Fourth Amendment right. They are entitled to qualified immunity and summary judgment on Abuomar's Fourth Amendment claim.

Count III: Fourteenth Amendment Substantive Due Process Claim

"[R]eluctant to expand the concept of substantive due process," the Supreme Court has embraced what has been termed the "more-specific-provision" rule.[21] Under the rule, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[22] Because Abuomar challenges the same conduct under both the Fourth and Fourteenth Amendments, the "more-specific-provision" rule applies, and they are entitled to summary judgment on Abuomar's Fourteenth Amendment claim.

---

[19] *Id.*
[20] *Id.* at 216–18.
[21] *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).
[22] *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

<u>Counts IV and VI: Hostile Work Environment Claims under Title VII and the PHRA</u>

To be actionable, a hostile work environment claim requires a plaintiff to adduce evidence of a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[23] The Supreme Court has been clear that a plaintiff must point to "extreme" conduct to support an actionable hostile work environment claim; "offhand comments," "isolated incidents," and "mere utterance[s] of an ethnic or racial epithet which engenders offensive feelings in an employee" do not suffice.[24]

To support his hostile work environment claims under Title VII and the PHRA,[25] Abuomar identified certain episodes in his deposition testimony, including derogatory and Islamophobic remarks by Officer Benza, abrasive behavior by Officer Kipple, and another officer's decision to throw Abuomar's jacket on the floor.[26] Although deserving of condemnation, those workplace occurrences were not "sufficiently severe or pervasive,"[27] as a matter of law, to meet the high threshold for a hostile work

---

[23] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

[24] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971)).

[25] Hostile work environment claims under Title VII and the PHRA are evaluated under the same standard. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

[26] App. 60, 73, 75.

[27] *Nat'l R.R.*, 536 U.S. at 116.

environment claim. Accordingly, defendants[28] are entitled to summary judgment on Abuomar's hostile work environment claims.

Counts V and VII: Retaliation Claims under Title VII and the PHRA

To establish a prima facie case of illegal retaliation under Title VII and the PHRA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[29]

The parties do not dispute that Abuomar engaged in a "protected employee activity" when, on January 8, 2014, he filed an EEOC complaint, containing allegations against Officer Benza. Abuomar alleges that defendants took adverse actions against him by compelling him on March 5, 2014, to write a statement contrary to the allegations in his EEOC complaint and by depriving him of his authority to select Islamic religious texts and organize observances, instead conferring that authority on a person who was not of the Islamic faith.

Assuming the events alleged qualify as "adverse actions" under Title VII and the PHRA, Abuomar has not adduced any evidence of a causal connection between his decision to file an EEOC complaint and the adverse actions alleged. Indeed, several aspects of the record undermine the existence of such a nexus. Notably, Abuomar's EEOC complaint from January of 2014 asserted allegations against Officer Benza only.

---

[28] Abuomar is not pursuing Title VII claims against the individual defendants-appellees.
[29] *Fogelman*, 283 F.3d at 567–68 (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)).

The events of March 5, 2014 concerned his subsequent allegations against Deputy Miller, not Officer Benza. Additionally, Reverend Duncan, Abuomar's immediate supervisor, purchased books for the library during a months-long period when Abuomar was absent from work, a decision squarely within the bounds of Duncan's authority as the Facility Chaplaincy Programming Director.[30] The lack of any evidence linking Abuomar's decision to file an EEOC complaint with the alleged adverse actions supports the grant of summary judgment on Abuomar's retaliation claims.

Counts VIII, IX and X, State Law Tort Claims

Abuomar contends that the District Court erred in holding that his state law tort claims for battery, intentional infliction of emotional distress, and false imprisonment were barred by sovereign immunity. However, he neglects the other independent reasons supporting the grant of summary judgment as to those claims,[31] chiefly his failure to adduce evidence to support the elements of each of those intentional torts.

The tort of battery requires "a harmful or offensive contact with a person" without that person's consent.[32] The record supplies no evidence of such contact, and Abuomar's self-serving averments alone are insufficient to withstand summary judgment.[33]

---

[30] App. 95, 106.

[31] "It is an accepted tenet of appellate jurisdiction that we may affirm a judgment on any ground apparent from the record . . .." *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010).

[32] *Levenson v. Souser*, 557 A.2d 1081, 1088 (Pa. Super. Ct. 1989).

[33] *See, e.g.*, *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (reiterating that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment") (internal citation omitted).

Similarly, a claim of intentional infliction of emotional distress "must be supported by competent medical evidence," such as "reliable testimony as to the nature and extent of [a plaintiff's] injuries." Abuomar has offered no such evidence.[34]

Finally, in order to establish the elements of false imprisonment, a plaintiff must show that he was detained and that his detention was unlawful.[35] A person is seized or detained "only when, by means of physical force or a show of authority, his freedom of movement is restrained."[36] Abuomar has failed to create a genuine question of material fact as to whether his freedom of movement was curtailed on March 5, 2014; he has failed to show that he was prevented from leaving the prison training room or prison by "physical force or a show of authority."[37] Indeed, he does not dispute that he was allowed to leave for a previously scheduled appointment despite Mooney's dissatisfaction with the lack of specificity in the statement Abuomar had drafted.

Because of these clear evidentiary gaps in the record and the absence of genuine questions of material fact, defendants are entitled to summary judgment on Abuomar's state law tort claims.

## IV.

For the reasons set out above, we will affirm the judgment of the District Court.

---

[34] *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).
[35] *See, e.g.*, *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).
[36] *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).
[37] *Id.*