STATE OF MAINE, Office of Maine
CETA, Petitioner,

v.

The UNITED STATES DEPARTMENT
OF LABOR, Respondent.

No. 81–1352.

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1981.

Decided Jan. 25, 1982.

Susan P. Herman, Asst. Atty. Gen., Augusta, Maine, with whom James E. Tierney, Atty. Gen., William H. Laubenstein, III., and Peter H. Stewart, Asst. Attys. Gen., Augusta, Maine, were on brief, for petitioner.

Charlotte M. Brookins, Atty., U. S. Dept. of Labor, Washington, D. C., with whom T. Timothy Ryan, Jr., Sol. of Labor, William H. DuRoss, III., Associate Sol. for Employ-ment and Training, and Jonathan H. Waxman, Counsel for Litigation, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This case arose under the Comprehensive Employment and Training Act as amended, 29 U.S.C. §§ 801 et seq. (the Act). Appellant State of Maine, Office of Maine CETA (OMC), a recipient of federal CETA funds, seeks review of the final decision of the Secretary, Department of Labor, that the "maintenance of effort" provisions of the Act had been violated by a CETA-funded program operated in School Administrative District # 43 (SAD # 43), Mexico, Maine.[1] The local Grant Officer for the Department had determined that SAD # 43's use of CETA-funded substitute teachers between 1974 and 1979 constituted a violation of the Act and its regulations, which require that CETA participants not be utilized to supplant regular workers but only to supplement them. 29 U.S.C. § 845(c)(25) (1973–1977); 29 U.S.C. § 823(g)(1) (1978); 29 C.F.R. § 96.24; 29 C.F.R. § 99.34 (1977).[2]

Following the Grant Officer's determination, wherein he ordered reimbursement of misspent funds, OMC requested a hearing, pursuant to the Act, to contest the decision. The administrative law judge (ALJ) found:

The CETA Act and regulations were violated on every occasion that a CETA substitute teacher taught for a continuous period of one calendar day or longer in a grade for which he or she was qualified to teach and had been hired by SAD to

---

1. SAD # 43 was a subgrantee of the CETA prime sponsor, OMC, which had the prime contract with the Department of Labor. Because the prime sponsor is responsible for the operation of the subgrant, the Act and regulations permit the Department to proceed against the prime sponsor for violations of the Act, even though the alleged violations occurred at the local level. See 29 U.S.C. § 816(d)(1); 29 C.F.R. § 98.27(d).

2. 29 U.S.C. § 823(g)(1) provides in pertinent part:

    (A) No program shall substitute funds under this chapter for other funds in connection with work that would otherwise be performed.

    (B) Jobs shall be created that are in addition to those that would be funded in the absence of assistance under this chapter. See 29 C.F.R. § 99.34 entitled "Maintenance of effort."

teach.[3] SAD personnel should have exhausted the regular substitute teacher list before utilizing CETA substitutes in these situations.

He ordered OMC to calculate the number of days CETA participants had been utilized in this manner and to reimburse the Department for the disallowed amount.

On appeal OMC argues that the ALJ erroneously allocated the burden of proof to OMC; that the decision was not supported by substantial evidence; that the ALJ erred in not allowing OMC's motion to join the subgrantees as parties; and that his failure to rule on OMC's request for a waiver of the disallowed costs was erroneous. Because the first two issues are closely interconnected, we address them together at the outset.

At the administrative hearing below, OMC went forward first pursuant to the CETA regulation which puts the burden of proof on the party requesting the hearing. 20 C.F.R. § 676.90(b)(1979).[4] OMC claims that this procedure was prejudicial to its case and that the Department of Labor should have been required at the hearing to establish a prima facie case of a maintenance-of-effort violation before OMC proceeded. The Department on the other hand asserts that its burden of production was met when counsel for OMC introduced Joint Exhibit # 1, which contained the school district's budget information on which the Grant Officer had relied in making his determination that a violation had occurred.

The general provision regarding the burden of proof at administrative hearings is found in the Administrative Procedure Act (APA), 5 U.S.C. § 556(d): "Except as otherwise provided by statute, the proponent of a rule or order[5] has the burden of proof." This has been interpreted to refer to the burden of production and not the ultimate burden of persuasion; the latter may be on the party challenging the order. *Environmental Defense Fund, Inc. v. EPA*, 548 F.2d 998 (D.C.Cir.1976); *Old Ben Coal Corp. v. Interior Bd. of Mine Operations Appeals*, 523 F.2d 25, 39 (7th Cir. 1975) (opinion on petition for rehearing). In its thorough opinion in *Environmental Defense Fund, Inc.*, the court examined the legislative history of 5 U.S.C. § 556(d), canvassed the case law, and concluded that the burden on the proponent is one of producing sufficient evidence to make out a prima facie case. 548 F.2d at 1012–1018 (supplemental opinion on petition for rehearing).

While the APA relates to the burden of production, the substantive statute and its regulations govern the allocation of the ultimate burden of persuasion. *Environmental Defense Fund, Inc.; Old Ben Coal Corp.* The burden of persuasion in a proceeding arising under the CETA Act is set forth at 20 C.F.R. § 676.90(b) (1979) and provides: "*Burden of proof.* The party requesting the hearing shall have the burden of establishing the facts and the entitlement to the relief requested." Relying on this regulation, the ALJ correctly assigned the burden of persuasion to OMC.

OMC further claims that the Department did not meet its burden of establishing a prima facie case. In the alternative it argues that even if the Department met its burden, the proceedings were fatally defective in that the ALJ required OMC to proceed first. We find, on the record in its

---

**3.** He so limited the finding due to the testimony of an OMC witness that when CETA teachers were used to substitute in grades for which they had not been hired, attempts had first been made to locate regular substitutes. From this he inferred that no such attempts were made when there was a qualified CETA person for that grade.

**4.** Although on appeal OMC argues that the ALJ erroneously assigned to it the burden of going forward with its case ahead of the Department, it appears from the record that counsel for OMC, familiar with the regulation, was prepared to proceed and acknowledged that that was what the regulation required. Counsel stated at the hearing that "the burden apparently shifts to us" in an appeal from the Grant Officer's determination and indicated that she "was just pointing out to the Court the inequity of that."

**5.** There appears to be no question that the "proponent" in this case is the Department of Labor and that its "order" is the final determination by the Grant Officer.

entirety, that the Department met its burden of establishing a prima facie case of a maintenance-of-effort violation.

In making his determination that a violation had occurred, the Grant Officer relied on a set of documents that have been referred to as the administrative file. This file includes the letter of complaint from a regular, non-CETA substitute teacher alleging that she had suffered a substantial loss in substitute work since the arrival of CETA participants in SAD # 43. Also contained in the file is the correspondence between the Grant Officer and a representative of OMC who provided the SAD # 43 substitute teacher budget information for school years 1973–74 through 1978–79. It was this data that constituted the basis for the Grant Officer's determination that CETA funds were being used to displace nonfederally funded local workers and, thus, that a maintenance-of-effort violation had occurred.[6]

The data shows that for school year 1973–74, the amount expended for regular substitute teachers exceeded the amount budgeted by approximately $6,000; no CETA-funded substitutes were used that year. For the following two years, however, when two CETA substitutes were available each year, the amount spent on regular substitutes decreased from 1973–74 and exceeded the budgeted amount by only $2,000. Finally, the years 1977–78 and 1978–79, when SAD # 43 used five and four CETA substitutes respectively, show a marked drop in the amount of local funds expended for substitutes as compared to the amount budgeted for those years and as compared to amounts expended in prior years. This budget information, as part of the administrative file, was introduced at the outset of the hearing by counsel for OMC as a joint exhibit.

■ A party will have satisfied his burden of production if the evidence presented is sufficient to enable a reasonable person to draw from it the inference sought to be established. McCormick, Evidence 789–790 (2d ed. 1972). We have no difficulty finding that the ALJ could reasonably have inferred from the budget data that the increased use of CETA teachers resulted in a decreased outlay of local funds and a displacement of regular workers. The Department's burden of establishing a prima facie case, therefore, was met.

■ Ordinarily, the party with the burden of coming forward with a prima facie case will be required to proceed first.[7] OMC's argument that the ALJ's departure from this procedure was reversible error turns on the question whether or not OMC was prejudiced by it. OMC has not pointed to any particular manner in which it was prejudiced, nor can we perceive any. It was clear that the Department would rely on the administrative file, particularly the budget data, for its case in chief, as that was the basis for the Grant Officer's determination. Indeed, OMC's counsel herself introduced the file; that it was introduced as a joint exhibit indicates OMC's awareness of the file's importance to the Department's case. OMC was given an opportunity to rebut the Department's case but declined to do so. Under the circumstances we cannot say that the order of presentation of evidence at the hearing constituted reversible error.

■ Once the Department's burden of production was met, the burden was on

---

6. The budget data shows the following:

| School Year | Amount Budgeted | Amount Expended | Available CETA Substitute Teachers |
|---|---|---|---|
| 1973-1974 | $ 8,000.00 | $13,895.23 | 0 |
| 1974-1975 | 9,500.00 | 11,087.54 | 2 |
| 1975-1976 | 10,000.00 | 12,137.89 | 2 |
| 1976-1977 | 10,000.00 | 12,072.98 | 2 |
| 1977-1978 | 13,000.00 | 3,690.16 | 5 |
| 1978-5/11/79 | 13,000.00 | 8,804.15 | 4 |

7. This is not, however, a rigid requirement. In *Old Ben Coal Corp. v. Interior Bd. of Mine Operations Appeals*, 523 F.2d 25 (7th Cir. 1975), for example, where the proponent of the order was held to have the burden of presenting a prima facie case, the court was unconcerned that the mine operator challenging the order proceeded first. The court noted that the operator was given the opportunity to rebut the case against it and failed to do so.

OMC to prove compliance with the Act. The ALJ supportably found that OMC did not meet its burden, and there is substantial evidence in the record as a whole to support his finding of a maintenance-of-effort violation throughout SAD # 43. Mrs. Barrett, SAD # 43's bookkeeper, testified at the hearing that CETA substitutes were routinely called to replace absent teachers without attempts having first been made to locate non-CETA substitutes. She appeared to limit this testimony to the procedure followed in kindergarten through fourth grade. At the close of the evidence the ALJ, apparently unsure whether a maintenance-of-effort violation had occurred, asked OMC to submit an affidavit or deposition indicating whether or not regular substitutes had been available on those occasions when CETA substitutes were utilized. The post-hearing affidavit of Mrs. Barrett, submitted by OMC, which was not limited to kindergarten through fourth grade, did not state that as a rule no regular substitutes were available when CETA substitutes were used. Rather, it merely indicated that when CETA substitutes were used in grades other than those for which they had been assigned, it was because the regular substitute list had been exhausted. Absent any evidence to the contrary, the ALJ reasonably inferred that, in general, when CETA substitutes were utilized in grades for which they had been assigned, the regular substitute list had not first been exhausted.

As we have stated, the burden was on OMC to show that it was in compliance with the CETA Act and regulations. The ALJ suggested to OMC counsel a number of ways of meeting this burden, for example, through testimony or documentary evidence that would indicate the procedure used for obtaining substitute teachers. Unfortunately for OMC, its own evidence tended to support rather than rebut the evidence indicating a violation. Documentation detailing attempts to locate regular substitute teachers is required under the CETA maintenance-of-effort regulation [8] and Mrs. Barrett's testimony that such records were not available because they would have been difficult to maintain does not relieve OMC of its duty to follow the regulation. OMC's failure to prove compliance with the Act more than justifies the ALJ's decision, and because there is substantial evidence to support it, we will not set it aside. 29 U.S.C. § 817(b) (1978).

OMC also claims the ALJ erred in denying its motions to join third parties under Fed.R.Civ.P. 14. Three of the motions were filed one week prior to the hearing and another was filed on the day of the hearing, approximately four months after OMC had filed its prehearing statement and nine months after it had requested the hearing. After so long a delay, joinder under Rule 14 requires leave of court, which resides in the sound discretion of the trial court. *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 477 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *East Hampton Dewitt Corp. v. State Farm Mutual Automobile Insurance Co.*, 490 F.2d 1234, 1246 (2d Cir. 1973). Because of the untimeliness of the motions and the inconvenience to the Department a continuance would cause, the ALJ was well within the scope of his discretion in denying the motions. Nor is Fed.R. Civ.P. 19 of any help to OMC, because the

---

**8.** 29 C.F.R. § 99.34(h) (1974–77) provides in pertinent part:

Prime sponsors, program agents, or subgrantees which utilize funds under this part to hire persons to fill positions previously supported by funds other than funds available under the Act or to provide services which are normally provided by temporary, part-time or seasonal workers or which are normally contracted out, shall maintain documentation that such use of funds does not constitute a violation of paragraph (c) of this section nor of any other requirements of this section.

subgrantees OMC sought to join were not necessary to the adjudication, since full recovery was available to the Department from OMC as the prime sponsor. *See* 29 U.S.C. § 816(d)(1); 29 C.F.R. § 98.27(d). *Cf.* 7 Wright & Miller, Federal Practice and Procedure: Civil § 1623, at 241 (joint tortfeasors need not be joined under Rule 19, since each is liable for entire amount of recovery).

■ Finally, OMC claims it was error for the ALJ to fail to rule on its request that the disallowance of funds resulting from the finding of a violation be waived pursuant to 20 C.F.R. § 676.88(c) (1979). That regulation provides that the Grant Officer in his discretion may decide to allow the costs, i.e., not require reimbursement, if certain criteria are met,[9] which criteria OMC, at the close of the hearing below, claimed to have met. We hold it was not error for the ALJ to omit a specific ruling on this issue.

The Administrative Procedure Act at 5 U.S.C. § 557(c) provides in pertinent part: "All decisions . . . shall include a statement of—(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record[.]" We conclude that § 557(c) does not require a ruling on an issue of discretion unless the aggrieved party asks that the discretion be exercised. Moreover, we do not believe that the provision precludes an agency from establishing reasonable regulations concerning the time at which a party must make such a request. Since OMC failed to ask that the Grant Officer exercise that discretion in accord with 20 C.F.R. § 676.88(c) (1979), neither the Grant Officer nor any subsequent reviewing authority within the Department was required to make findings under § 557(c).

*Affirmed.*

BOWNES, Circuit Judge (concurring separately).

While I, of course, fully concur in the court's opinion as I have drafted it above, insofar as it goes, I feel that more should be said than my colleagues are prepared to say. I therefore set forth these additional views of mine in this separate concurrence. I feel that under the CETA regulations the Office of Maine CETA had the entire burden of proof and that, therefore, the ALJ conducted the hearing in a proper procedural manner.

As the majority opinion recognizes, the APA provision governing the burden of proof at administrative hearings, 5 U.S.C. § 556(d), has been interpreted by the courts to mean the burden of production and not the ultimate burden of persuasion. By its own terms the APA permits allocation of this burden to a party other than the proponent of the rule or order if "otherwise provided by statute." The burden of proof in a hearing commenced under the CETA Act is governed by 20 C.F.R. § 676.90(b) (1979) which provides: *"Burden of proof.* The party requesting the hearing shall have the burden of establishing the facts and the entitlement to the relief requested." Because I believe this language encompasses both the burdens of production and persuasion, this is a case in which the burden of production, i.e., establishing a prima facie case, has been "otherwise provided by statute." Thus, since the CETA regulation relieved the Department of Labor, as the proponent of an order, of the burden of production (establishing a prima facie case), the ALJ was correct in requiring OMC to proceed first.

The elaborate mechanism under the CETA Act for the Department's preliminary investigation and determination of violations of the Act supports placing the initial burden of production on OMC. The Grant Officer has the authority and the

---

**9.** 20 C.F.R. § 676.88(c) (1979) provides in pertinent part:

In any case in which the Grant Officer determines that there is sufficient evidence that funds have been misspent, the Grant

Officer shall disallow the costs, except that costs associated with ineligible participants and public service employment programs may be allowed when the Grant Officer finds [five criteria].

duty to investigate whenever he has reason to believe that a recipient of CETA funds is not complying with the requirements of the Act. 20 C.F.R. § 676.86(c) & (e) (1979). After completing the investigation, he must make an initial determination whether the recipient is violating the Act or its regulations. A finding by the Grant Officer that there has been a violation must be based on substantial evidence. 20 C.F.R. § 676.-88(a)(2) (1979). In the initial determination, which must be in writing and mailed to the recipient, the Grant Officer must, *inter alia*, state the basis for the finding and give notice of an opportunity for an informal resolution of the matter. 20 C.F.R. § 676.88(b) (1979). If the informal resolution has been unsuccessful, the Grant Officer must within 120 days after the filing of the complaint

> provide each party with a final written notice in duplicate by certified mail, return receipt requested, that (1) indicates that efforts to informally resolve matters contained in the initial determination pursuant to paragraph (a) have been unsuccessful, (2) lists those matters upon which the parties continue to disagree, (3) lists any sanctions, and required corrective actions, including any other alteration or modification of the plan, grant, agreement or program intended by the Grant Officer, and (4) informs the parties of their opportunity to request a hearing pursuant to these regulations.

20 C.F.R. § 676.88(e) (1979).

Based on the budget data supplied to the Grant Officer by OMC, a final determination was made that the maintenance-of-effort provisions had been violated. Certainly, if the Department had the burden at the hearing of establishing a prima facie case of a violation, this data would have been sufficient. But I believe the requirement that the Grant Officer base a determination of a violation on substantial evidence, 20 C.F.R. § 676.88(a)(2) (1979), is the functional equivalent of requiring the Department to make out a prima facie case. A final determination, therefore, supported as it must be by substantial evidence, "shifts" to OMC the burden of proving compliance with the

Act at the hearing which it requested. The ALJ correctly found that OMC did not meet this burden.