**William E. LEVENTHAL, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, and City of Los Angeles, Respondents.**

No. 84-7223.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1985.

Decided July 23, 1985.

William E. Leventhal, in pro. per.

William DuRoss, Louise Cavanaugh, Washington, D.C., Jessica F. Heinz, Los Angeles, Cal., for respondents.

Before PREGERSON, and ALARCON, Circuit Judges, and SOLOMON,* District Judge.

ALARCON, Circuit Judge:

William Leventhal appeals a decision of an Administrative Law Judge [ALJ] for the Department of Labor rejecting his claims that the City of Los Angeles fired him in retaliation for reporting violations of the Comprehensive Employment and Training Act [CETA], and that the City denied him procedural due process. We affirm.

## I

### FACTUAL BACKGROUND

The City of Los Angeles hired William Leventhal in August 1979 to monitor city programs under the Comprehensive Employment Training Act.[1] On March 7, 1980, the City suspended Leventhal for five days for insubordination and verbal assault on a supervisor, and other disruptive conduct. On March 11, 1980, the City sent a certified letter to Leventhal informing him that he would be discharged on March 14, 1980, the day after his suspension expired, because he had threatened physical violence against a co-worker and a former supervisor. The letter advised Leventhal that if he wished to challenge his termination, he should do so before March 14th.

Leventhal went to San Francisco to report alleged CETA violations to the Department of Labor on March 11th, and did not

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. CETA was repealed in October 1982, but the Act and its regulations still apply to this case because it was pending in October 1982. *See* 29 U.S.C. § 1591(e).

receive notice of his discharge until March 13th. Leventhal requested an extension of time to respond, but the City denied his request because of the "serious and emergency" nature of Leventhal's conduct while on suspension.

On March 19, 1980, Leventhal requested a hearing on his termination, asserting that the City unlawfully terminated him in retaliation for reporting CETA violations to federal officials. The City did not commence a hearing until July 31, 1980. Hearing Officer Jerry Ellner ended the hearing early, after Leventhal raised a challenge to Ellner's impartiality.

Leventhal appealed to the grant officer of the Department of Labor. On January 27, 1981, the grant officer remanded the case to the City for a second hearing, finding that the original hearing had not been completed and that there were serious questions regarding the hearing officer's impartiality. On remand, City Hearing Officer Donald Black conducted a de novo proceeding commencing on March 9, 1981. After four days of hearings, Black concluded that Leventhal's discharge was for good cause and that he had been afforded all the due process to which he was entitled.

Leventhal appealed Black's decision to the Department of Labor on May 5, 1981. On July 16, 1981, the grant officer dismissed Leventhal's complaint, finding insufficient evidence of any violation of CETA.

Leventhal then appealed to the Department of Labor's Office of Administrative Law Judges. The ALJ decided not to hold an evidentiary hearing, relying instead on the pleadings, exhibits, and the transcripts and recordings of the second city hearing. The ALJ heard oral argument on February 17, 1983. On February 17, 1984, the ALJ concluded that Leventhal was terminated for cause and not in retaliation for reporting CETA violations. The ALJ also held that the City failed to hold a timely hearing, but that this procedural violation did

not entitle Leventhal to any relief because it did not prejudice his substantive rights. Leventhal timely appeals this decision.

## II

### STANDARD OF REVIEW

▮ We must accept the ALJ's factual findings as long as they are supported by substantial evidence. Pub.L. 95–524, § 107(b), 92 Stat. 1929 (1978); *City of Oakland v. Donovan,* 703 F.2d 1104, 1106 (9th Cir.), *clarified,* 707 F.2d 1013 (9th Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Donovan,* 703 F.2d at 1106 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). When the ALJ makes one of several rational interpretations of the evidence, the ALJ's decision must be upheld. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir.1984).

▮ We accord substantial deference to the ALJ's interpretations of CETA and its accompanying regulations. *See Hawaiian Electric Co. v. United States Environmental Protection Agency,* 723 F.2d 1440, 1447 (9th Cir.1984). We apply de novo review, however, to the ALJ's legal conclusions not involving CETA. *See Whaley v. Schweiker,* 663 F.2d 871, 873 (9th Cir.1980).

## III

### RETALIATORY TERMINATION

Leventhal contends that the City violated 20 C.F.R. § 676.82(b) (1980) by discharging him in retaliation for his reporting alleged CETA violations to the Department of Labor.[2] The ALJ rejected this contention, finding that Leventhal was terminated because of his disruptive conduct and not in retaliation for his report to the Department of Labor.

---

**2.** All references to the Code of Federal Regulations are to the 1980 edition, which is the edition applicable to the events in this case.

■ Substantial evidence supports the ALJ's decision. On February 27 and 29, 1980, Leventhal used rude and provocative language in verbal confrontations with his direct supervisor, Arnold Berghoff, and two co-workers, Maribel Llorens and Craig Hammill. Leventhal's head supervisor, Alonso Almeida, then suspended Leventhal temporarily and told him to bring any complaints to his direct supervisor and not to other employees. While on suspension, however, Leventhal called a fellow employee, Richard McCaughey, at home twice, and visited McCaughey's house once. Leventhal used threatening language towards McCaughey, and said that if Almeida didn't kill Leventhal, Leventhal would kill Almeida. These incidents provided the City with ample cause to discharge Leventhal. *See NLRB v. Sun Co. of San Bernardino*, 215 F.2d 379, 382 (9th Cir.1954) (discharge of employee for threatening physical violence against supervisor was lawful); *see also NLRB v. Soft Water Laundry, Inc.*, 346 F.2d 930, 934–35 (5th Cir.1965) (discharge for engaging in vulgar and offensive conduct toward supervisor was justified).

Leventhal does not dispute that these confrontations occurred, but claims that he never used or intended to use physical force, and that the other employees provoked the confrontations. The record contains some evidence to support these claims. The record also contains substantial evidence, however, that Leventhal overreacted to any provocation, and that his repeated confrontations with fellow employees justified the City's decision to discharge him.

■ Nevertheless, Leventhal argues that he was in fact terminated in retaliation for reporting CETA violations. Leventhal has the burden of proof on this issue. 20 C.F.R. § 676.89(b); *State of Maine v. United States Department of Labor*, 669 F.2d 827, 829 (1st Cir.1982). We have concluded, after review of the entire record, that substantial evidence supports the conclusion that Leventhal failed to meet his burden. The two people responsible for terminating Leventhal, Wayne Kelly and Ken-

neth Spiker, testified that they were aware of Leventhal's threat to complain to federal authorities, but that this threat did not influence their decisions to discharge Leventhal. Leventhal produced no significant evidence to contradict this testimony. The record contains substantial evidence that the City terminated Leventhal because of his repeated confrontations with fellow employees.

## IV

### PROCEDURAL DUE PROCESS

#### A. *Pre-Termination Opportunity to Respond*

Leventhal contends that the City violated his due process rights by failing to give him an adequate opportunity to contest his termination before it went into effect. Leventhal admits that he received one day's advance notice of his termination, but argues that the City should have granted his request for additional time to respond to the notice. The ALJ held that the City could not have violated Leventhal's right to a pre-termination opportunity to respond because Leventhal had no such right.

■ We hold that, contrary to the ALJ's conclusion, constitutional due process protections did apply to Leventhal's termination. 20 C.F.R. § 676.43(a)(1) required the City to treat its CETA administrative staff in conformance with the merit principles of 5 C.F.R. Part 900, Subpart F. One of these principles is that a permanent employee shall be discharged only for good cause. 5 C.F.R. § 900.606–1(a). If a statute provides that a public employee can be terminated only for good cause, the employee has a constitutional due process interest in continued employment. *See Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir.1980) (statute requiring just cause for termination creates a due process property interest, but no such requirement exists for discharging CETA participants (in contrast to CETA administrative staff)). 20 C.F.R. § 676.43(a)(1) required the City to treat its CETA administrative staff in conformance with the merit principles of 5 C.F.R. Part

900, Subpart F. One of these principles is that a permanent employee shall be discharged only for good cause. 5 C.F.R. § 900.606–1(a). As a permanent employee and a CETA monitor, Leventhal would thus ordinarily have been entitled to a pre-termination hearing. *See Board of Regents v. Roth*, 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972) ("except for extraordinary situations," a person deprived of a protected interest must be afforded a hearing before termination.)

■ Under the circumstances of this case, however, the City did not violate Leventhal's due process rights by denying his request for additional time to respond to the notice of termination. A pre-termination hearing is not required in emergency situations where a valid governmental interest justifies postponing the hearing until after the termination. *See id.* The City reasonably concluded that Leventhal's threatening remarks against his former supervisor's life constituted emergency circumstances requiring Leventhal's immediate termination. Moreover, the City did give Leventhal some advance notice and an opportunity to respond.

### B. *Timely Hearing*

Leventhal contends that the City failed to provide a timely hearing and resolution of his retaliatory discharge claim, as required by CETA regulations. The ALJ agreed with this contention, but held that Leventhal was not entitled to any relief because he eventually received a full and fair hearing, and did not suffer any prejudice to his substantive rights.

Substantial evidence supports the ALJ's conclusion that the City violated Leventhal's right to a timely hearing. Because the City was a recipient of CETA funds, it was required to hold a hearing on Leventhal's complaint within thirty days of its filing, and to resolve it within sixty days. 20 C.F.R. § 676.83(a) and (c). The City, however, waited over four months to hold its first hearing, and took over seven months to reach a decision.

■ Substantial evidence also supports the ALJ's conclusion that Leventhal has shown no prejudice due to the City's failure to hold a timely hearing. Although the first hearing was inadequate, the second hearing before Officer Black provided Leventhal with a full opportunity to present his claims. Leventhal alleges that the delay in this hearing impaired his ability to present his case, but points to no specific evidence in the record that would support a finding that an earlier hearing would have altered the outcome of his case. The denial of Leventhal's procedural right to a timely hearing and decision did not prejudice his right to present his claim of retaliatory discharge.[3]

### C. *Right to an Impartial Hearing Officer*

Leventhal contends that Hearing Officer Black's conduct of the second city hearing and his written decision show that he was not a fair and impartial arbitrator, as required by 20 C.F.R. § 676.83(c)(8). The ALJ found that the overall record showed that Black was not biased against Leventhal.

■ Substantial evidence supports the ALJ's conclusion that Black was not biased. Leventhal received a full, four-day hearing in which he was able to present evidence and to examine and cross-examine numerous witnesses. Black did not deny Leventhal a fair hearing by justifiably limiting Leventhal's argumentative and often

---

**3.** Some cases suggest that the delay of a required hearing might support a claim for nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (students suspended without a hearing were entitled to nominal damages even if the suspensions were justified and no actual injury was shown); *County of Monroe v. Department of Labor*, 690 F.2d 1359, 1363 (11th Cir.1982)

(CETA participant who was justifiably terminated in a procedurally deficient manner was entitled to no more than nominal damages absent proof of actual injury). We do not reach the issue of whether Leventhal is entitled to nominal damages because it was not addressed by the ALJ, and Leventhal has not raised it on appeal.

repetitive questioning of witnesses. Although Leventhal complains that Black excluded two witnesses, he has failed to identify those witnesses. Leventhal also contends that Black should have considered transcripts of testimony that two witnesses, Norman Mezey and Joseph Kasey, gave a year earlier in the first hearing. Black, however, allowed those witnesses to testify at the second hearing. Moreover, a review of the record shows that the testimony of these witnesses was essentially the same at both hearings.

Black stated in his decision that Leventhal's "obvious inability to control his words and deeds at a hearing only persuade me that this same attitude must have been exhibited during February and March 1980." Leventhal contends that this statement shows a personal bias against him. Black also noted, however, that he was not personally biased by Leventhal's conduct, although it did influence his assessment of the City witnesses' credibility. Black's consideration of Leventhal's conduct at the hearing was legitimate, and does not show a lack of impartiality. *Cf. United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (in imposing sentence, trial judge may legitimately consider not only the evidence heard at trial, but also the defendant's demeanor).

Leventhal also argues that Black's inaccurate summaries of the testimony of several witnesses in his decision manifest bias. Black's summaries, however, are essentially correct. Black did erroneously state that Gary Davis testified that Leventhal slapped away the hand of a co-worker, Craig Hammill. We find this mistake insignificant, however, because it is undisputed that Leventhal had a confrontation with Hammill, and Hammill testified that Leventhal slapped his hand away.

### D. *Grant Officer's Remand*

■ Leventhal contends that the grant officer's decision to remand his first complaint to the City further delayed resolution of his case, in violation of his procedural rights under 20 C.F.R. § 676.85(b)(1) and 20 C.F.R. § 676.83. We decline to consider this contention because Leventhal failed to appeal the grant officer's remand decision within the ten-day limit set by 20 C.F.R. § 676.88(f). Moreover, Leventhal did not specifically raise the issue of the grant officer's remand in his request for a hearing on the grant officer's subsequent dismissal of his second complaint, as required by 20 C.F.R. § 676.88(f). Leventhal waived any objection to the grant officer's remand.

### E. *City Transcripts*

Leventhal complains of the poor quality of the city transcripts of the tape recordings of his hearing before Officer Black. Although CETA does not require the City to prepare transcripts, Leventhal had a procedural due process right to a record which is sufficiently complete and accurate to permit fair appellate review. *See Schwander v. Blackburn*, 750 F.2d 494, 497 (5th Cir. 1985) (criminal defendant has right to record of sufficient completeness to allow full appellate review).

■ The record presented to us is sufficiently complete to resolve Leventhal's appeal. Although the transcripts contain a number of mistakes and omissions, they are a substantially accurate and complete record of the hearings before Officer Black. The majority of mistakes involve single words or phrases, and do not affect the essence of the witnesses' testimony. Moreover, Leventhal had an opportunity to correct the transcripts by comparing them to the tape recordings, and his corrections are part of the record. Finally, Leventhal has failed to indicate specifically how the deficiencies in the transcripts have prejudiced his substantive rights. We conclude that the record is sufficiently complete and accurate to permit a fair resolution of Leventhal's appeal. *See id.* (omissions in trial transcript did not deny defendant meaningful appeal because they did not concern the issues on appeal, and defendant failed to allege any specific prejudice); *United States v. Pigg*, 471 F.2d 843, 845–46 (7th Cir.) (transcript was sufficiently complete to permit adequate appellate review because it contained 95% of the witnesses' testimony, and the omissions were merely peripheral and not prejudicial), *cert. de-*

**1358**

*nied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973).

AFFIRMED.