810 F.2d 200
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donnie COLLINS, Petitioner,
v.
UNITED STATES DEPARTMENT OF LABOR; Columbus/Franklin County
Consortium, Respondents.
 No. 85-3102.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1986.
 
 Before ENGEL, JONES and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, Donnie R. Collins, seeks review of the final decision of the Secretary of Labor (Secretary) that the Columbus/Franklin County Consortium (CFCC) did not violate 20 C.F.R. § 676.43(a)(4) (1986) in evaluating petitioner's 1979 application for a job funded by a Comprehensive Employment and Training Act (CETA) grant. Petitioner challenges the Secretary's conclusion that the evidence failed to establish that CFCC did not ensure equal employment opportunity through the use of objective personnel policies and practices within the meaning of the regulation. The jurisdiction of this court is invoked under section 107(a) of CETA, 29 U.S.C. § 817(a), repealed by Pub.L. 97-300, Title I, § 184(a)(1), 96 Stat. 1357 (1982). Because we rule that petitioner failed to establish any substantive damage resulting from the alleged procedural errors, any award of back pay or reinstatement against the CFCC would be inconsistent with the purposes of CETA and the regulations promulgated thereunder. Accordingly, we affirm the final decision of the Secretary.
 
 
 2
 The CFCC was the "prime sponsor" of a CETA grant that was administered by CFCC and the Columbus Department of Community Services (DCS). In August 1979, DCS had three CETA-funded vacancies for monitors. These positions carried the classification "Urban Sociologist I." It is undisputed that the requirements for this position were:
 
 
 3
 [P]ossession of a degree in one of the social sciences or a closely related field. Experience in the field of urban renewal, social welfare or community relations could be substituted for two years of the required education on a year-for-year basis.
 
 
 4
 App. 62. The standard selection procedure implemented by the hiring bodies was:
 
 
 5
 a. applications submitted to the Department of Community Services;
 
 
 6
 b. interview with William Crockett, Business Manager and personnel officer;
 
 
 7
 c. interview with staff from the unit where the vacancy existed, in this case Charles W. Wilder, Program Administrator;
 
 
 8
 d. selection preferences sent from the unit to Mr. Crockett who reviews the lists, considers additional information which may be available, and forwards recommendations to the appointing official, the Director of the DCS;
 
 
 9
 e. the Director nominates an individual and staff prepare a Personnel Action form and a Provisional Appointment Nomination (PAN);
 
 
 10
 f. the nominee is sent to the Columbus Department of Deputy Services where the selection is reviewed. If there are no questions with respect to the person's qualifications and if there is a bona fide vacancy to fill, the person is referred to the Municipal Civil Service Commission (CSC) where the paperwork is completed and the appointment is made official. In the event CSC rules that the person does not meet the job eligibility requirements, it completes the PAN denying appointment. CSC completes paperwork only after the appointing authority has made a nomination.
 
 
 11
 On occasion the CSC will screen an application before the interviewing process begins to determine whether an applicant has the minimum qualifications for the job being filled. This occurs when there is a question as to whether an applicant's particular job experience can be substituted for an educational requirement. Pre-screening by CSC is not a usual part of the application procedure.
 
 
 12
 App. 62-63.
 
 
 13
 Petitioner applied for the openings in August of 1979 and had personal interviews with both Crockett and Wilder. In conjunction with step "d" of the procedure, Wilder sent a list of ten preferred candidates to Crockett. However, at that point, it appears that the process somehow broke down with respect to Mr. Collins. Crockett testified that he had some questions as to whether Collins met the educational requirements for the position. Accordingly, he stated that he sent petitioner's application to CSC for a prescreening determination of eligibility. In fact, though petitioner had not yet received his bachelor's degree, his combined education and work experience qualified him to apply for the job. Nevertheless, Crockett forwarded the remaining nine preferred applications, minus petitioner's, to the Director of the DCS for selection and provisional appointment. There is no indication in the CSC records that they ever received or acted upon petitioner's application. Ultimately, the appointing official filled the three vacancies from the list of nine and petitioner's application was never received or considered by her.
 
 
 14
 Petitioner filed a grievance with the CFCC over his nonselection on May 6, 1980. On February 13, 1981, after an informal hearing, CFCC issued its final determination that there was no cause for corrective action. One week later, petitioner appealed the prime sponsor's decision to Richard Palmore, Grant Officer of the United States Department of Labor, claiming inter alia that the CFCC violated 20 C.F.R. § 676.43 by evaluating his application against the wrong criteria, not giving him the same opportunity for employment and not informing him of his nonselection. On June 8, 1981, Palmore issued his findings of fact, essentially highlighted above, and a final determination. Palmore concluded that his investigation failed to support petitioner's allegations that section 676.43 was violated. Specifically, Palmore ruled that while there was "confusion" over petitioner's qualifications, and that such confusion resulted in his not being considered for the position, that alone "is not evidence that the sponsor failed to use objective personnel standards as required by [the regulation]." Further, Palmore specifically found that those individuals that were hired for the three positions were in fact more qualified than petitioner in terms of education and experience.
 
 
 15
 On June 18, 1981, petitioner appealed the decision of the Grant Officer and requested a hearing before an Administrative Law Judge (ALJ). A hearing was ultimately held on January 19, 1984, before ALJ C. Richard Avery. The ALJ's decision and order of November 30, 1984, adopted Palmore's findings of fact and affirmed his decision. With respect to the alleged failure to use objective personnel standards, the ALJ quoted Palmore to the effect that a violation of section 676.43 was not established by the mere fact that, "for whatever reason," petitioner's name was not referred to the appointing officer. The ALJ also noted, as did Palmore, that because the three individuals hired for the positions were more objectively qualified than petitioner, he would not be entitled to an award of a similar job or back pay in any event. The ALJ's decision and order became the final action of the Secretary on December 30, 1984, pursuant to 20 C.F.R. § 676.91(f) (1986).
 
 
 16
 This court must uphold the Secretary's findings of fact if they are supported by substantial evidence. 29 U.S.C. § 817(b), repealed by Pub.L. 97-300, Title I, § 184(a)(1), 96 Stat. 1357 (1982); Kentucky v. Donovan, 704 F.2d 288, 292 (6th Cir.1983). The ALJ's decision, as adopted by the Secretary, may not be disturbed if it is one of several rational interpretations of the evidence. Leventhal v. United States Dept. of Labor, 766 F.2d 1351, 1354 (9th Cir.1985), cert. denied, 106 S.Ct. 1217 (1986). Furthermore, courts accord substantial deference to the Secretary's interpretations of CETA and its implementing regulations. See North Haven Board of Educ. v. Bell, 456 U.S. 512, 522 n. 12 (1982); Udall v. Tallman, 380 U.S. 1, 16 (1965); Leventhal, 766 F.2d at 1354.
 
 
 17
 The gist of petitioner's claim is that he was denied consideration under the same objective personnel policies and practices that were in place generally and were applied to all other applicants, and that this constituted a violation of section 676.43(a)(4). The relevant factual findings of the Secretary were that the mishandling of petitioner's employment application did not establish that the basic personnel procedures in place were violative of subsection (a)(4), and that in any event, the three individuals that ultimately were hired for the positions were hired through proper procedures and, in comparison to petitioner, possessed objectively superior qualifications. There is substantial evidence in the record to support the first finding because there is no evidence that the basic procedure in place was not objectively based or that it was not the general practice to follow this procedure. The sole instance in which the procedure failed--petitioner's case--is at best circumstantial evidence of discrimination or program abuse; it is not a proper attack on the integrity of the system per se. Moreover, to the extent that the first finding is based on the Secretary's interpretation of the purpose and scope of the regulation, that interpretation is accorded substantial deference and otherwise appears to be correct.
 
 
 18
 However, even assuming that petitioner had established, as a threshold matter, that section 676.43(a)(4) was violated and that the failure to properly consider his application was a procedural error, this alone would be insufficient to warrant an award of reinstatement or back-pay. He would still have to establish that he suffered some substantive damage as a result of the procedural error. In other words, he would have to show that the ultimate failure to hire him for one of the three positions was improper. See City of Ann Arbor v. United States Dept. of Labor, 733 F.2d 429, 432 (6th Cir.1984) (citing Kentucky v. Donovan, 704 F.2d at 296); see also Carey v. Piphus, 435 U.S. 247 (1978) (damages from procedural error may not be presumed but must be proved). This, the petitioner did not and cannot do.
 
 
 19
 The Secretary specifically found that the three individuals that were hired for the monitor positions were objectively more qualified than petitioner. To the extent that the record establishes that all three possessed at least bachelor's degrees in related fields and also had highly relevant work experience, while the petitioner had not yet completed his bachelor's degree and had less relevant work experience, there is substantial evidence to support the Secretary's finding on this point. Thus, on the basis of objective qualifications, the failure to hire petitioner for one of the three positions was not wrongful. Because petitioner suffered no substantive damage, any award of reinstatement or back pay would be inconsistent with the purposes of CETA and the regulations promulgated thereunder. 20 C.F.R. § 676.91(c) (1986); cf. Kentucky v. Donovan, 704 F.2d at 296.
 
 
 20
 Accordingly, the final decision of the Secretary of Labor is AFFIRMED.