**Steven P. LAUER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 89–1649 (JP).**

United States District Court, D. Puerto Rico.

Aug. 30, 1991.

---

Mark B. Frost, Frost, De Mesquita & Rudow, Philadelphia, Pa., for plaintiff.

Isabel Muñoz Acosta, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiff, a United States Naval Serviceman, brought a negligence action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Plaintiff was a pedestrian on liberty walking on Tarawa Road which was owned and maintained by the United States Navy when he was struck by a motor vehicle and fractured his left tibia and fibula, his right fibula, suffered a right frontal lobe brain hemorrhage and other concomitant brain injuries. The accident occurred at nighttime and plaintiff alleged that the defendant had a duty to provide lighting and/or a sidewalk area for pedestrians and that the failure to provide same, caused the accident. In answer to plaintiff's complaint, defendant alleged that it did not have a duty to provide walkways or lighting for the road in question and that plaintiff's action was barred due to both his own contributory negligence and as a result of the Feres Doctrine.

The requisite Initial and Pretrial Conferences were held and a Non–Jury Trial was conducted on June 4, 1991. Based on the evidence presented by the parties and after due deliberation, this Court now makes the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. Steven P. Lauer enlisted into the United States Navy in June of 1985.

2. After going through basic training and receiving special training in the areas of construction, plaintiff was deployed with his construction battalion from Mississippi to Roosevelt Roads, Puerto Rico, in August of 1986.

3. Plaintiff's typical workday was from 7:00 a.m. to 3:30 p.m. After work plaintiff was free to do as he chose until the following morning when he was required to report for duty. He could go anywhere he wanted outside of the base and did not have to check in until reporting to work the next morning.

4. On Friday, October 31, 1986, plaintiff finished work at 3:30 p.m., and was on liberty until Monday morning, November 3, 1986.

5. There were a number of recreational facilities on base which served alcoholic beverages to military personnel. While on base the evening of October 31, 1986, the plaintiff had a few beers and something to eat and decided to go to a bar off base known as Don's Lighthouse.

6. At approximately 11:30 p.m., plaintiff took a military bus on base which dropped him and other servicemen off at Gate No. 1 at the Naval Station at Roosevelt Roads.

7. Tarawa Road is a two-lane asphalt surface road with a 35 m.p.h. posted speed limit and is the main road to go into and to leave the base.

8. Tarawa Road is owned, maintained, and operated by the United States Navy.

9. Tarawa Road is not on the Naval Base at Roosevelt Roads.

10. Tarawa Road is well-traveled by military personnel because it is the main road for egress and ingress to the base.

11. Tarawa Road between Gate No. 1 and Don's Lighthouse has no lighting and sidewalks or areas for pedestrians to walk. Although there was a grassy shoulder area adjacent to the road, the grass sloped

downward and was full of depressions and holes.

12. Navy and other military personnel would exit at Gate No. 1 to walk to Don's Lighthouse which was a local bar frequented by military personnel.

13. The United States Navy knew that military personnel would walk to Don's Lighthouse frequently and that the road was well-traveled by pedestrians prior to the accident.

14. Prior to October 31, 1986, the plaintiff had never walked on Tarawa Road.

15. At approximately 11:30 p.m., plaintiff upon getting off the bus proceeded to walk in a northerly direction on the extreme right-hand edge of the road with other military personnel.

16. Plaintiff was walking on Tarawa Road with a British sailor who was to the right of him and proceeding north in the same direction as traffic.

17. The plaintiff was following other military personnel who were also walking on Tarawa Road and were walking in a northerly direction on the right side of the road.

18. A large number of military personnel were walking on the edge of the road and were not walking in the grassy shoulder area because it was difficult to see in the dark and the shoulder area had depressions, holes, and sloped down.

19. Plaintiff was three quarters of the way to Don's Lighthouse when he was struck from the rear by a vehicle operated by Armetta Trujillo, another military officer, who was travelling at approximately 30 m.p.h., which is an average speed in this community.

20. As a result of the impact, plaintiff went over the hood and the windshield of the striking vehicle and landed on the extreme right side of the roadway and shoulder area.

21. Armetta Trujillo operated a 1977 Grand Prix. The right headlight and windshield were damaged on the vehicle as a result of the accident.

22. Trujillo could not see the plaintiff until impact or immediately before impact because it was dark and there was no lighting on the road.

23. At the time of the impact, the plaintiff was rendered unconscious and was taken by military personnel to the hospital at Roosevelt Roads.

24. Plaintiff was diagnosed with a fracture to the left tibia and fibula as well as to the right fibula as well as sustaining a right frontal lobe hemorrhage. The CT Scan showed permanent brain damage to the right frontal lobe area. The injury to the left tibia required a surgical procedure known as an open reduction limited internal fixation of the left tibia due to the severe break in the tibia. During the procedure, three screws were placed in the leg which will remain in the leg permanently.

25. The investigation conducted into the accident by the Navy, found that there were two previous accidents on Tarawa Road in the year of 1986 in which the roadway's lighting was a contributing factor to the cause of the accident.

26. Guidelines by the American Association of State Highway and Transportation officials are guidelines utilized in the Commonwealth of Puerto Rico with respect to the design of highways and streets. Those guidelines contain provisions and recommendations that roadways, such as Tarawa Road, should have lighting if there is pedestrian traffic and a history of prior accidents.

27. Due to the amount of pedestrian traffic in the evening hours on Tarawa Road and prior accidents, lighting should have been installed prior to the accident involving the plaintiff.

28. Due to the lighting conditions on Tarawa Road, Armetta Trujillo was unable to see the plaintiff within a safe stopping distance.

29. An investigation was conducted into the accident involving the plaintiff wherein Findings of Fact, Conclusions and Opinions were found by the investigation officer.

30. This portion of the investigation is referred to as a JAGMAN (Judge Advocate General Manual Investigation).

31. Finding No. 53 states: "The Security Report states that this segment of roadway is very poorly lit. This is the third accident of this type in this area in the last year. Two of the accidents resulted in injury to military personnel and a third cost a member his life in which the roadway's lighting was a contributing factor".

32. The Navy found in its JAGMAN investigation that plaintiff was grossly negligent and that the injuries were incurred not in the line of duty and due to plaintiff's own misconduct.

33. This finding was endorsed by the Commanding Officer of the United States Naval Construction Battalion and by the Commander of the United States Naval Forces Caribbean and the Judge Advocate's Office.

34. The endorsement is a Command decision and the Commanding Officers and the Department of Navy found that the plaintiff was not in the line of duty at the time of the accident. Accordingly, the United States Navy adopted all recommendations, opinions and findings of the investigation into the accident involving the plaintiff.

35. Although the endorsement requested that the plaintiff receive a misconduct hearing with respect to the findings of the Naval investigation, no misconduct hearing was ever conducted with respect to this incident.

36. During the investigation and subsequent thereto, the Navy failed to meet requirements of Section 0306 and 0308 of the JAG Manual which refer to advice as to the statement of injuries and Privacy Act Advice Statements.

37. Due to the magnitude of plaintiff's injuries, the plaintiff was transferred on December 1, 1986, from Roosevelt Roads to United States Naval Hospital at Bethesda, Maryland.

38. A Medical Board determined on January 12, 1987, that due to the injuries sustained in the accident that the plaintiff be put on a limited duty status for a six-month period.

39. Sometime in April, 1987, the plaintiff was transferred from Bethesda to the Naval Station at Anacostia, Maryland.

40. From the date of the injury until plaintiff's transfer to Anacostia, plaintiff's left leg was always casted. Plaintiff was further receiving medical treatment for his head injuries.

41. Plaintiff was informed at the time of the transfer that there was no light duty or limited duty jobs available and was required to do heavy construction work in accordance with plaintiff's military occupational specialty.

42. The plaintiff complained that he could not perform this work due to the injuries that he sustained and the fact that he was on limited duty.

43. The magnitude of the fracture to the left tibia was so severe that this injury in and of itself was totally disabling for a period of at least one year and this injury required physical therapy for at least eight to nine months. The physical therapy was not rendered to the plaintiff while he was in the military.

44. The United States Navy violated the findings of the Medical Board by ordering plaintiff to perform duties contrary to the Medical Board's Order.

45. While at Anacostia, the plaintiff continued to complain to his military superiors concerning his work assignments and his inability to perform same.

46. That plaintiff's superiors made him feel that he was worthless and inferior due to the fact that he was unable to perform his duties. As a result of the degrading treatment that plaintiff received from his military superiors, he committed a suicide gesture with an overdose of medication, in addition to going A.W.O.L. for twenty-six days.

47. On September 3, 1987, shortly after plaintiff's return from being on unauthorized absence, plaintiff agreed to a military separation classification—"other than honorable conditions". Plaintiff was never ad-

vised of his rights with this type of separation and did not knowingly waive his rights and benefits by accepting this type of discharge.

48. In January, 1988, after the plaintiff's discharge from the military, the plaintiff applied for veteran's benefits with respect to his medical injuries sustained in his automobile accident.

49. The Veterans' Administration's denied plaintiff's application because the incident was found not to be in the line of duty and because the injury was a result of plaintiff's own misconduct.

50. At the time of his discharge and subsequent thereto, the plaintiff experienced pain and discomfort in his left leg and back due to the injuries sustained in his accident. Plaintiff further exhibits problems with respect to headaches, memory loss, lightheadedness, blurred vision, and ringing in the ears due to the head injuries sustained in the accident.

51. Examination by the governments' own doctors verified that the brain was damaged in the frontal lobe due to a frontal lobe hemorrhage and a brain contusion in the form of a contrecoup injury which affected the frontal and temporal regions of the brain. That the plaintiff further sustained a post-concussion syndrome as a result of the accident.

52. Neuropsychological testing was performed which further exhibited that the plaintiff sustained brain damage to the areas injured in the automobile accident. This testing corroborated that the plaintiff suffered memory loss, headaches, problem solving difficulties and other cognitive dysfunctions.

53. Plaintiff's injuries both to the brain and to his left leg diminish his ability to work and will require vocational counselling and rehabilitation for plaintiff to be able to perform meaningful jobs in society.

54. Plaintiff's injuries to his left leg and brain are permanent in nature and will require future medical treatment.

55. The injuries caused by the accident are disabling and plaintiff will have a di-minished earning capacity due to the injuries sustained in the accident.

56. Plaintiff has worked various jobs since his discharge and was caused to leave each due to headaches, memory loss and injuries to his leg and back which affected his ability to work.

57. Based upon the expert testimony of Civil Engineer John Posusney, the Court finds that the United States Navy was negligent in failing to provide lighting and a sidewalk area and/or designated area on the shoulder of the road for pedestrians to walk. Tarawa Road was the type of street that due to the volume of military pedestrian traffic in the evening hours and the amount of prior accidents, the United States Navy should have installed lighting and an area for servicemen to walk for the safety of pedestrians as well as drivers and the failure to do same was negligent and the causation of the accident. If lighting had been installed, Armetta Trujillo would have observed the plaintiff earlier and would have been able to stop her vehicle within a safe breaking distance to prevent the accident. The accident occurred on the extreme right-hand side of the roadway approximately three feet from the shoulder of the road.

58. Based upon the testimony of orthopedic surgeon, Dr. Grovas–Badrena the Court finds that plaintiff sustained a fracture to the left tibia and left fibula and a fracture to the right fibula. Plaintiff sustained an extremely severe fracture to the left tibia which required surgery—a spiral fracture, where the bone was fractured in at least three places and did damage to the adjoining muscles and tissues. The injury was permanent in nature and the plaintiff will experience back and leg pain resulting from this accident in the future.

59. Based upon the testimony of neurologist, Dr. Arbona, the Court finds that the plaintiff sustained permanent brain damage due to a frontal lobe hemorrhage and a brain contusion in the form of a contrecoup injury which affected the frontal and temporal regions of the brain. As a result of these injuries, the plaintiff has a permanent post-concussion syndrome and that

plaintiff's complaints of headaches, memory loss, lightheadedness, blurry vision, and ringing in the ears is consistent with the injuries sustained in the accident and are permanent in nature.

60. Dr. John Gordon is a neuropsychologist, who performed a series of tests on the plaintiff, the findings of which the Court hereby adopts. These tests demonstrated evidence of impairment to the brain and specifically to the areas of the front and temporal regions of the brain which control memory and intelligence areas. It was demonstrated that the plaintiff tested below average and retarded in many areas of intelligence including word retrieval, problem solving and memory. The tests further verified that plaintiff's injuries are consistent with the damage to the areas of the brain that were involved in the accident.

61. The plaintiff will need vocational counselling and rehabilitation to be able to work since his cognitive dysfunctions will affect not only his daily life but his ability to perform duties at work. Therefore, plaintiff's injuries are permanent in nature and will require future medical treatment; plaintiff's injuries to his head caused cognitive dysfunctions with respect to the brain which are permanent in nature; and the injuries to his left leg and brain caused by the accident are disabling and will have a diminished earning capacity due to the injuries sustained in the accident.

## II. CONCLUSIONS OF LAW

In *Feres v. United States*, 340 U.S. 135, 138, & 146, 71 S.Ct. 153, 155, & 159, 95 L.Ed. 152 (1950), the Supreme Court held that the only time the United States Government is liable to members of the military who sustain injuries, is when those injuries are not incurred in the course of activity which is incident to military service. This Doctrine has come to be known as the Feres Doctrine and it requires the Court to determine whether a serviceman and in this instance, the plaintiff, was in the line of duty at the time of injury. If the serviceman/plaintiff was not in the line of duty at the time of injury, the Feres Doctrine would not be a bar to Federal Tort Claims Act (FTCA) claims.

The First Circuit held in a factually similar case, *Morey v. U.S.*, 903 F.2d 880 (1st Cir.1990), that the act of walking away from one's station of duty while on liberty, renders accidents which occur, "not incident to military service". The Feres Doctrine is not a bar to plaintiff, Steven Lauer's, FTCA claim, since the plaintiff was not in the course of activity and/or in the line of duty incident to military service at the time of the accident. Furthermore, the United States Navy found plaintiff was not acting in the line of duty at the time of his motor vehicle accident; and the endorsements by the military Chain of Command specifically found plaintiff was not acting in the line of duty at the time of his motor vehicle accident. *See Parker v. U.S.A.*, 611 F.2d 1007 (5th Cir.1980); *Mills v. Tucker & U.S.A.*, 499 F.2d 866 (9th Cir. 1974); and *Pierce v. U.S.A.*, 813 F.2d 349 (11th Cir.1987). Plaintiff was not in the line of duty or engaged in activity incident to his military service at the time of his motor vehicle accident when walking along Tarawa Road toward a local bar while on a two and one-half day liberty. (*See Parker*, supra.). Plaintiff's action on Tarawa Road while on liberty did not subject him to any type of military supervision, control or discipline. (*See Parker*, supra.) The United States Navy by finding the plaintiff's conduct to be grossly negligent in the JAG-MAN investigation made a determination that plaintiff was not in the line of duty and the injuries were not incurred in the course of activity incident to military service. Plaintiff was denied Veteran's benefits as a result of the fact that his injuries were determined not to have been sustained while plaintiff was in the line of duty, he is thus permitted to pursue a FTCA suit and not barred by the Feres Doctrine. (See *Johnson v. U.S.*, 481 U.S. 681, 107 S.Ct. 2063, 2065, 95 L.Ed.2d 648 (1987)).

Whether the United States is liable for negligence of its employees is a question of state law. 28 U.S.C. § 1346(b), 2674; *United States v. Orleans*, 425 U.S.

807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Rodríguez v. U.S.*, 455 F.2d 940, 941–42 (1st Cir.1972). Article 1802 of the Civil Code of Puerto Rico is the general source of law that governs the determination of liability of an individual for a cause of action in damages for negligence. 31 L.P.R.A. § 5141. Under Puerto Rican law, a duty also exists to maintain public highways in a manner that comports with providing the traveling public sufficient protection. *Morales v. Castro, et al.*, 85 P.R.R. 275, (1962).

◼ The United States Government was negligent for the following reasons: it did not utilize the guidelines of the American Association of State Highway and Transportation officials (ASHTO) in building and maintaining the road; the amount of military traffic at nighttime on Tarawa Road and the number of prior accidents wherein lighting was a contributing factor for the causation of the accident warranted the installation of luminaries; and for its failure to maintain an appropriate area for military personnel to walk. Furthermore, the United States Navy was negligent in its failure to maintain Tarawa Road in not providing lighting and areas for pedestrians to walk and that said failure was the proximate cause of the injuries to the plaintiff. Since the United States Government owned, maintained and operated Tarawa Road, it should have installed lighting for the safety of pedestrian traffic and to improve the hazardous conditions that existed on Tarawa Road. Plaintiff was not contributorily negligent the night of the incident in question due to the following facts: this was the first time plaintiff ever walked on the Tarawa Road; there was no lighting on the road; there was no sidewalk or an area to walk on; whatever area was adjacent to the road was dangerous to walk on; the location of plaintiff three feet in from

the edge of the road was not improper as there was another soldier walking to the right of plaintiff.

◼ Armetta Trujillo and the United States Navy are joint tortfeasors such that Ms. Trujillo is found to be twenty percent (20%) at fault for striking plaintiff's person and the United States Navy is eighty percent (80%) at fault for failing to maintain Tarawa Road with proper walkways and/or adequate lighting. Joint Tortfeasor, Armetta Trujillo, was the driver of the striking motor vehicle, but was neither a named defendant nor third-party defendant and was not an indispensable party as she was neither prejudiced or lost rights by not having been joined as a party to this litigation.[1] Pursuant to Puerto Rican substantive law, the defendant can be held jointly and severally liable for all damages even though there may exist joint tortfeasors. *Cruz, et al. v. Frau*, 31 P.R.R. 87; *Cubano v. Jiménez*, 32 P.R.R. 155; *González v. White Star Bus Line, Inc.*, 53 P.R.R. 328; and *Rivera v. Great American Indemnity Co.*, 70 P.R.R. 787, 790 (1950). The Federal Law provides that where substantive law allows contribution among joint tortfeasors, the proper procedure to follow would be to implead all potential tortfeasors. Fed.R.Civ.P. 14(a). Pursuant to Puerto Rican substantive law, there exists a right of contribution among joint tortfeasors. See 31 L.P.R.A. § 3109.

◼ Furthermore, a joint debtor has the option of filing an independent case alleging a civil action for contribution or could join all other joint tortfeasors within the original action. As such, defendant's right of contribution and cause of action for same would not exist until defendant would pay plaintiff in this case one hundred percent (100%) of the award, even though defendant was found to only be eighty percent (80%) at fault. The cause of

---

1. The Federal Rules of Civil Procedure, Rule 19, permits a plaintiff to sue only one joint tortfeasor without joining the others. Therefore, it was proper for plaintiff to have only sued defendant, the United States Navy, and not named the joint tortfeasor, Armetta Trujillo. Federal Rule of Civil Procedure 19(a) permits a Federal Court to proceed toward an adjudication without the presence of a necessary party so long as the party is not indispensable. (*See: Baker v. Estate of Rosenbaum*, 58 F.R.D. 496, 498 (D.Puerto Rico 1972); *Lacombe v. Manpower, Inc.*, 109 F.R.D. 350 (D.Puerto Rico 1986); *Maine v. U.S. Department of Labor*, 669 F.2d 827, 832 (1st Cir.1982); and *Flynn v. Hubbard*, 782 F.2d 1084, 1089 (1st Cir.1986).

action for contribution under Puerto Rican law arrives at the time other joint tortfeasors have paid more than their fair share. (*See: Ramos v. Caparra Dairy, Inc.,* 116 D.P.R. 60 (1985); *Conjugal Partnership of Pedro Juan Muriente v. Conjugal Partnership of José Biascochea Escobar,* 109 D.P.R. 279 (1979); and *García v. Government of the Capital,* 72 P.R.R. 133, 141 (1951).

Wherefore, in view of the foregoing, the Court finds that the defendant is at fault for the injuries of the plaintiff, and must pay one hundred percent of the award as the joint tortfeasor who is jointly and severally liable in this case. Judgment shall be entered accordingly, with regard to plaintiff's past, present and future pain and suffering. Judgment cannot be entered with regard to plaintiff's future and past medical care, as the plaintiff did not submit evidence of such possible loss for the Court's evaluation.

IT IS SO ORDERED.