**OAKLAND COUNTY BOARD OF COMMISSIONERS, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 89–3837.

United States Court of Appeals, Sixth Circuit.

Submitted July 23, 1990.

Decided Feb. 28, 1991.

Charles G. Preston, Great Falls, Va., for petitioner.

Ellen L. Beard, Charles I. Hadden, Allen H. Feldman, U.S. Dept. of Labor, Washington, D.C., John H. Secaras, Office of the Sol., Chicago, Ill., for respondent.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner-appellant, The Oakland County Board of Commissioners ("Oakland"), a CETA prime sponsor, appeals the decision of respondent-appellee, the United States Department of Labor ("DOL"), to deny the reimbursement of administrative costs incurred by petitioner in the resolution of three CETA audits after the Secretary of Labor's established cutoff date for the ter-

mination of the use of CETA funds. For the following reasons, we determine we do not have jurisdiction to hear this case.

## I.

In 1982 petitioner-appellant, the Oakland County Board of Commissioners, was a prime sponsor receiving funds under the provisions of the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. §§ 801–999. In 1982, the Job Training Partnership Act ("JTPA"), 29 U.S.C. §§ 1501–1791; replaced CETA as the primary federal program funding state efforts in job training and education for youth, welfare recipients, the economically disadvantaged, and dislocated workers. See S.Rep. No. 469, 97th Cong., 2d Sess. 1 (1982), reprinted in 1982 U.S.Code Cong. & Admin.News 2636. Both statutes instruct the Secretary of Labor to administer congressionally appropriated funds to qualifying state agencies for use in approved job training and educational programs and to establish standards for such administration. While most of CETA was repealed on October 13, 1982, the JTPA continued funding of all CETA program activities until September 30, 1983. 29 U.S.C. § 1591(a). The JTPA also provided for consolidation of former programs and measures for orderly transition between the programs. 29 U.S.C. § 1591(c).

After the enactment of the JTPA, the Department of Labor published a series of CETA bulletins which were sent to prime sponsors receiving CETA funds, including petitioner, to provide instructions and policy guidance for the phasedown and closeout of existing CETA programs. These instructions provided for an Administrative Cost Pool ("ACP") to be established from previously appropriated CETA funds to fund the activities associated with CETA audits and closeout of the various CETA program activities. Prime sponsors with sufficient ACP funds were allowed to incur administrative costs, which were reimbursed from the ACP pool. The Bulletins consistently warned the prime sponsors that a cutoff date had been established with regard to closeout costs that would be

allowable as charges against the ACP. On January 4, 1984, the CETA Bulletin indicated that the cutoff date for incurring closeout costs was March 31, 1984, or six months after the termination of CETA funding on September 30, 1983 under the JTPA (29 U.S.C. 1591(a)). On March 26, 1984, the ACP closeout deadline was extended, allowing prime sponsors to request extensions of ACP grants until July 31, 1984, but emphasized "[i]n no case, will this extension go beyond July 31, 1984." The Department of Labor granted no further extensions to any of the approximately 475 prime sponsors nationwide.

On July 23, 1984, petitioner requested a further extension of the deadline for incurring closeout costs until September 30, 1984, stating that its primary reason was that considerable work was necessary to resolve three outstanding audits. The Department of Labor grant officer denied the request on August 21, 1984, noting that petitioner's ACP subgrant had already been extended ten months beyond the termination of CETA funding on September 30, 1983. On August 28, 1984, petitioner again requested an extension in submitting its ACP closeout package, but agreed not to incur costs past July 31, 1984. On November 13, 1984, the DOL regional administrator notified petitioner that its closeout documents for the Master Plan/Administrative Cost Pool (ACP) were over two months delinquent, and as such, all costs incurred after September 30, 1983 might be disallowed and subjected to debt collection actions. On March 7, 1985, the grant officer issued his findings after reviewing petitioner Oakland's closeout documents, and determined that (1) "no funds are due from the Department to Oakland and that all CETA bills have been paid with the exception of some late bills to be paid by the Department from deobligated funds, and (2) the Master Plan/Administrative Cost Pool was closed, and matters pertaining to the closeout were deemed to be resolved." Thus, in effect, this Final Closeout and Deobligation of Funds Order denied Oakland's request for an extension of use of its unexpended ACP funds for the outstanding audits. On March 21, 1985, Oakland appealed the March 7, 1985 Final Closeout and Deobligation of Funds Order, asserting that all costs incurred in the resolution of its remaining CETA audits were allowable costs, payable from Oakland's unexpended ACP funds.

The parties requested that a hearing before an Administrative Law Judge ("ALJ") be waived and that the matter be decided on the record. On November 26, 1986, the ALJ issued a decision, holding that petitioner was entitled to "any properly expended and documented costs necessary in the resolution of their three pending CETA audit cases," which were incurred after July 31, 1984. The Department of Labor grant officer, who had denied the request for reimbursement of these costs, appealed the decision of the ALJ. On August 9, 1989, the Secretary of Labor issued a final decision and order, reversing the ALJ and holding that the Secretary's establishment of a cutoff date of July 31, 1984 for the termination of the use of CETA funds was in accordance with CETA and JTPA, and petitioner's request for administrative costs incurred after July 31, 1984 was properly denied. Petitioner filed a notice of appeal on September 14, 1989, 36 days after the Secretary issued her final order on August 9, 1989.

## II.

The government argues that in the present case, petitioner's appeal was untimely filed because under the JTPA, 29 U.S.C. § 1578(a)(1), an appeal from a final order of the Secretary must be filed within 30 days. Petitioner disagrees, arguing that the JTPA contains a "savings" clause, which provides that no judicial or administrative proceeding under CETA pending on October 13, 1982, or begun between October 13, 1982 and September 30, 1984, shall be affected by the JTPA. 29 U.S.C. § 1591(e). Petitioner argues that the present action was begun before September 30, 1984, and therefore is not affected by the JTPA. Instead, the provisions of the prior law, CETA, apply and under CETA, a petitioner is allowed 60 days in

which to appeal a final decision of the Secretary. 29 U.S.C. § 817(a).

We find that the present case does not fall within the language of the "savings" clause of the JTPA. The "savings" clause states:

§ 1591. Transition

(e) Continuation of judicial proceedings The provisions of this chapter shall not affect administrative or judicial proceedings pending on October 13, 1982, or begun between October 13, 1982, and September 30, 1984, under the Comprehensive Employment and Training Act.

In the present case, no "judicial or administrative proceeding" was begun between October 13, 1982 and September 30, 1984. On July 23, 1984, Oakland requested an extension of the closeout deadline for the use of ACP funds until September 30, 1984. This request was denied by the grant officer on August 21, 1984. However, this initial denial did not commence an administrative or judicial proceeding. On August 28, 1984, Oakland again requested an extension. In a letter dated November 13, 1984, Oakland was notified by the Department of Labor regional administrator that its closeout documents for the ACP pool were due and in a letter dated March 7, 1985, Oakland was notified by the DOL that the ACP pool of unexpended CETA funds had been closed in a Final Closeout and Deobligation of Funds Order, indicating that no further extensions for the use of ACP funds would be granted. On March 21, 1985, Oakland appealed the March 7, 1985 Final Closeout and Deobligation of Funds Order.

We find that for purposes of the "savings" clause a judicial or administrative proceeding did not begin in the present case until March 21, 1985, when petitioner appealed the Final Closeout and Deobligation of Funds Order. An ALJ's jurisdiction to hear cases under CETA derived from 20 C.F.R. § 676.88(f), which authorizes an affected recipient to request a hearing before the ALJ within 10 days of receipt of the grant officer's dismissal of a complaint or the grant officer's issuance of a final determination.[1] In the present case, there was not a final determination until March 7, 1985. An administrative or judicial proceeding did not commence with the series of letters that passed between petitioner and the DOL grant officer and regional administrator, but with the appeal on March 21, 1985 of the grant officer's final determination.

We find that because an administrative or judicial proceeding did not begin until March 21, 1985, the "savings" clause of the JTPA does not apply. In *Tennessee Dept. of Employment Security v. Secretary of Labor*, 801 F.2d 170 (6th Cir.1986), this court determined that the "savings" provision of the JTPA was inapplicable because the judicial proceeding was not commenced until December 5, 1984, and the cutoff date for application of the "savings" clause was September 30, 1984. *Id.* at 173.[2] In the present case, the judicial or administrative proceeding was not commenced until March 21, 1985, nearly six months after the cutoff date for application of the "savings" clause. Because the "savings" clause does not apply, this case should have been adjudicated under the provisions of the JTPA,[3] which requires that an appeal be filed within 30 days of the final decision of the Secretary. 29 U.S.C. § 1578(a)(1). Because petitioner filed this appeal on September 14, 1989, 36 days after the final decision of the Secretary on August 9, 1989, the appeal was untimely filed. The

---

1. Section 676.88 is entitled "[i]nitial and final determination; request for hearing at the Federal level," and provides in pertinent part:

(f) *Request for hearing.* Within 10 days of receipt of the Grant Officer's dismissal of the complaint or of the Grant Officer's final determination, any affected recipient ... may request a hearing by filing a request for hearing with the Chief Administrative Law Judge.... The request for hearing shall be accompanied by a copy of the Grant Officer's final determi-

nation or dismissal of the complaint and shall specifically state those provisions of the determination upon which a hearing is requested.

2. In contrast to *Tennessee Dept.*, we do not assume petitioner's request for an extension of funds in the present case constituted "an administrative proceeding."

3. The magistrate and Secretary of Labor erred in stating that this case arises under CETA.

584

taking of an appeal within the prescribed time limits is mandatory and jurisdictional. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988); *Baker v. Raulie*, 879 F.2d 1396, 1398 (6th Cir.1989) (per curiam). For these reasons, we conclude that we do not have jurisdiction to hear the present case and the appeal is hereby dismissed.