CITY OF NEWARK, NEW
JERSEY, Petitioner,

v.

UNITED STATES DEPARTMENT
OF LABOR, Respondent.

No. 92–3489.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 18, 1993.

Decided June 29, 1993.

Charles G. Preston, Preston & Preston, Great Falls, VA, for petitioner.

Annaliese Impink, U.S. Dept. of Labor, Office of Sol., Washington, DC, for respondent.

Before SCIRICA, COWEN and GARTH, Circuit Judges.

**OPINION OF THE COURT**

GARTH, Circuit Judge:

The City of Newark petitions this court to review and reverse the final decision of the Secretary of Labor, ordering the City to repay to the Department of Labor $780,557 in funds previously granted under the Comprehensive Employment and Training of Act of 1973. Because we reject Newark's contention that the Secretary is statutorily barred from recouping the funds, and because substantial evidence supported the Secretary's determination that Newark failed to comply with the pertinent reporting and documentation requirements, we will affirm the Secretary's final decision.

I.

In the early 1980's the Comprehensive Employment and Training Act of 1973, as amended by Pub.L. No. 95–524, 92 Stat.1909 (1978), 29 U.S.C. § 801 *et seq.* (Supp.1978) ("CETA"), was repealed by the Job Training Partnership Act of 1982, 29 U.S.C. § 1501 *et seq.* (1982) ("JTPA"). As the Department of Labor ("DOL") wound down its CETA programs following the passage of the JTPA, DOL's Office of the Inspector General ("OIG") commissioned the certified public accounting firm of Lucas Tucker & Company to conduct an audit of the City of Newark's CETA records.

The audit, which focused on three CETA grants awarded to Newark in October of 1982,[1] and which covered the period of August 1, 1983 through May 31, 1984, served two primary purposes: first, to determine whether Newark had taken corrective action pursuant to a prior "Special Purpose Review" and, second, to determine the balance of

CETA funds remaining in Newark's accounts in order to ensure that excess funds were returned to DOL. (A. 200).

Due to Newark's apparent failure to keep adequate records, the Tucker auditors could not reconcile the CETA records kept at the Mayor's Office of Employment Training ("MOET") with the records of the City Treasurer, and could not, therefore, determine Newark's CETA fund balance as of May 31, 1984. The auditors also advised DOL to examine Newark's failure to record cash receipts and disbursements in its general ledger after December 31, 1983, and the failure to record expenditures in the ledger after March 31, 1984. Finally, the auditors recommended that a certain undocumented expenditure be examined.

Upon reviewing the Tucker report, a DOL Grant Officer made several "findings" regarding the Newark accounts and CETA funds owed to DOL. All but two of those findings, numbers 1 and 4, were resolved by stipulation of partial settlement between the parties. (*See* A. 32). Finding 1 of the Grant Officer's Final Determination, dated February 7, 1985, disallowed Newark's claim of $464,450 in CETA costs, due to the City's failure to record receipts, disbursements and expenditures in the general ledger, and due to several other allegedly inadequate or improper accounting practices. (A. 13–14).[2] The $464,450 disallowance was reduced to $350,557 through the parties' Third Stipulation of Partial Settlement. (A. 31). The Grant Officer based this disallowance on 41 C.F.R. § 29–70.207–2(b), which requires recipients to maintain records identifying the source and application of CETA funds. (A. 14).

In Finding 4 the Grant Officer disallowed a claim of $430,000, because an accrued expenditure in that amount was entered in the

---

1. The grants were identified by number: 34–3–106–05 (effective October 1, 1982 to June 30, 1984); 34–3–106–22 (effective October 1, 1982 to September 30, 1984); and 34–3–106–32 (effective October 1, 1982 to September 30, 1983).

2. The Grant Officer also questioned the reliability of the general ledger because of (1) the failure to identify expenditures by fiscal year or by financial status report; (2) the Treasurer's lack of accountability for discrepancies between CETA funds received by Newark and actual cash disbursements; (3) the Treasurer's failure to remove replaced checks from outstanding checklist; (4) the failure to report or account for voided checks in the general ledger; and (5) the omission of handwritten payroll checks from the payroll register, general ledger and budget activity report. Final Determination at 1 (A. 13).

general ledger without documentary support. This determination was based on OMB Circular A–102, Attachment G 2, which requires a grant recipient's financial management system to provide for "source documentation" in support of accounting records. (A. 15).

Pursuant to Newark's administrative appeal of the Grant Officer's Final Determination, a hearing was held before a DOL administrative law judge on January 24–25, 1989. On June 4, 1992 the ALJ affirmed the Grant Officer's Final Determination, as adjusted by the parties' partial settlement agreement, and ordered Newark to repay to DOL $780,557, plus interest, out of non-federal funds. (A. 215). On July 1, 1992, the ALJ entered an amended order, deleting the award of interest. (A. 219). Newark appealed the ALJ's decision to the Secretary of Labor, who on July 27, 1992 declined to accept the case for review. Newark subsequently appealed the Secretary's decision to this court. We have jurisdiction to review the Secretary's final decision pursuant to 29 U.S.C. § 1591(e).

## II.

Under both CETA and the JTPA the Secretary of Labor is empowered to recover funds found to have been improperly spent by grant recipients. *See* 29 U.S.C. § 816(d)(1) (granting such power under CETA); 29 U.S.C. § 1574(d) (same under the JTPA). Newark argues, however, that a statutory provision regarding the transition from CETA to the JTPA, 29 U.S.C. § 1591(e), bars the Secretary from recovering misspent CETA funds unless the "administrative or judicial proceedings" brought to recover such funds were commenced prior to

---

**3.** Although we recognize that this unpublished opinion lacks precedential authority, we nonetheless consider persuasive its evaluation of a factual scenario virtually identical to the one before us in this case; an audit of CETA fund accounts conducted from October 1, 1983 to May 31, 1984, followed by a grant officer's final determination issued on January 30, 1985. Applying to those facts the reasoning of *Inland Manpower Association v. United States Department of Labor,* 882 F.2d 343, 344 (9th Cir.1989), the Court of Appeals for the Sixth Circuit concluded that "the CETA auditing process, including an audit report, constituted an administrative proceeding."

September 30, 1984. Section 1591(e) provides that

> [t]he provisions of this Act [the JTPA] shall not *affect* administrative or judicial proceedings pending on the date of enactment of this Act, or begun between the date of enactment of this Act and September 30, 1984, under the Comprehensive Employment and Training Act.

29 U.S.C. § 1591(e) (emphasis added).

Newark contends that administrative proceedings in this case did not commence until February 7, 1985, when the Grant Officer issued his Final Determination. Therefore, Newark argues, the recovery of the $780,557 in misspent funds is barred under section 1591(e).

■ Although, for the reasons set forth below, we would not adopt Newark's reading of section 1591(e) as a "sunset" provision or a statute of limitations, we need not reach that issue of statutory interpretation because we conclude that in this case "administrative proceedings" commenced with the performance of the Tucker audit from August 1, 1983 through May 31, 1984. In reaching this conclusion, we are persuaded by the reasoning of the Courts of Appeals for the Ninth and Sixth Circuits, which have concluded that the auditing process, which informs a final determination of monies owed by a grant recipient to DOL, may mark the commencement of administrative proceedings. *See Inland Manpower Association v. United States Department of Labor,* 882 F.2d 343, 344 (9th Cir.1989); *St. Clair County CETA, Michigan v. United States Department of Labor,* No. 89–3829 at 2, 3, 1990 WL 94232 (6th Cir. 1990).[3]

---

*St. Clair County CETA, Michigan v. United States Department of Labor,* No. 89–3829 at 2, 3, 1990 WL 94232 (6th Cir.1990).

We are not persuaded by Newark's contention that the holding of *St. Clair County, supra,* was overruled by *Oakland County Board of Commissioners v. United States Department of Labor,* 926 F.2d 580 (6th Cir.1991). *Oakland County* identified the point at which administrative proceedings commenced under an entirely distinct set of facts, which did not involve an audit of CETA fund accounts or a determination of misspent funds due and owing to DOL, as do both this case and *St. Clair County.*

**34**

Moreover, we regard Newark's characterization of the Tucker audit as a mere "review," rather than an "audit," to be an empty exercise in semantics, particularly given the report's stated purpose "to determine the Prime Sponsor's [Newark's] fund balance." (A. 3). Thus, consistent with the approach taken in other courts of appeals, we conclude that administrative proceedings here commenced with the Tucker audit, which was concluded prior to September 30, 1984, and which could not, therefore, be barred by section 1591(e), even if that provision were deemed to be a statute of limitations.

■ We add, however, that were it necessary to reach the issue, we would not interpret section 1591(e) to deprive the Secretary the authority to recover misspent CETA funds where proceedings were commenced after the purported "sunset" date. While section 1591(e) provides that the JPTA shall not *affect* administrative or judicial proceedings commenced by September 30, 1984, Newark would have us rewrite that provision to state that the JTPA "shall not *bar or preclude* administrative or judicial proceedings" commenced by that date under CETA. *See* 29 U.S.C. § 1591(e). Newark then urges us to infer the converse—that section 1591(e) *does* bar or preclude such proceedings commenced after September 30, 1984.

We can identify no basis for adopting this convoluted construction of the statute. In particular, Newark has called our attention to no provision in the JTPA that would, indeed, bar the Secretary from recovering misspent funds, and which would thereby "affect" administrative proceedings commenced after September 30, 1984 in the manner Newark suggests. In the absence of any such JTPA provision, we cannot merely presume that Congress used the word "affect" to mean "bar" or "preclude."

Indeed, it would appear, to the contrary, that Congress in no way intended the passage of the JTPA to hinder the Secretary's efforts to recoup misspent or mismanaged funds granted under CETA. *See, e.g.,* H.R.Rep. No. 1124, 95th Cong., 2d Sess. 3, 5, 13 (1978) (House Report on 1978 CETA amendments expresses concern over fraud and abuse of funds in CETA program);

S.Rep. No. 891, 95th Cong., 2d Sess. 42–44, *reprinted in* 1978 U.S.CODE CONG. AND ADMIN. NEWS 4480, 4522–24; 124 Cong. Rec. 25,168 (1978) (Senate Report on 1978 CETA amendments, same); S.Rep. No. 469, 97th Cong., 2d Sess. 26, 27, *reprinted in* 1982 U.S.CODE CONG. AND ADMIN. NEWS 2636, 2661, 2662 (Senate Report on JTPA expresses concern over DOL audit resolution process and failure to recover misspent funds).

Moreover, both CETA and the JTPA impose reporting requirements on grant recipients and auditing requirements on DOL in order to assure proper expenditure of federal funds, *see* 29 U.S.C. § 835; 20 C.F.R. § 676.-86(d); 29 U.S.C. § 1574(a)(2); 20 C.F.R. § 629.42, and, as stated, both CETA and the JTPA authorize the Secretary to recover misspent funds. *See, e.g., City of Camden, New Jersey v. United States Department of Labor,* 831 F.2d 449, 450–51 (3d Cir.1987).

We thus agree with the conclusion of the Court of Appeals for the Ninth Circuit that section 1591(e) "cannot be read as a bar to recoupment proceedings begun after September 30, 1984. It merely subjects proceedings commenced after that date to the remedial and jurisdictional provisions of JPTA rather than CETA." *Inland Manpower,* 882 F.2d at 344. As in *Inland Manpower,* we note that "[w]hile the recoupment provisions of the JTPA differ slightly from those in CETA," we have been alerted to no differences that would change either the procedure or substance underlying the Secretary's decision in this case. *See id.* at 343.

### III.

■ In addition to its jurisdictional argument, Newark challenges the substance of the ALJ's determination. We will affirm that determination if it is supported by substantial evidence. *See* 29 U.S.C. § 817(b) (1978).

Once DOL established a *prima facie* case before the ALJ, the burden shifted to Newark to prove that the City complied with CETA and that act's regulations. *See State of Maine v. United States Department of Labor,* 669 F.2d 827, 829–31 (1st Cir.1982).

Newark argues that DOL failed to establish a *prima facie* case because the Tucker auditors "never attempted to trace the expenditures [at issue] into the bank accounts where the funds were transferred." Opening Brief at 21. However, whether the funds were traceable or not is immaterial to the disposition of this case. Rather, the issue before the ALJ was whether Newark had failed to comply with CETA's reporting and documentation requirements. We hold that the ALJ's determination that Newark had failed to so comply was supported by substantial evidence.

The Tucker audit's disclosures of poor record keeping and the failure to make appropriate entries in the general ledger supported the ALJ's conclusion that DOL had presented a *prima facie* case of Newark's noncompliance with reporting requirements. Indeed, the Tucker audit provided substantial evidence for the ALJ's determination that, as to the $350,577 disallowance under the Grant Officer's Finding 1, Newark's "failure to maintain accounting records violated basic regulatory requirements and prevented the auditor from verifying that significant amounts of grant money had been properly spent." (A. 205). Similarly, the ALJ's affirmance of the Grant Officer's Finding 4, which disallowed a claim for an accrued expenditure of $430,000, was based on the substantial evidence, provided by the Tucker audit, that the claimed expenditure was unsupported by appropriate documentation.

## IV.

Finally, Newark contends that the CETA regulations at 41 C.F.R. § 29–70.207–2(b) and OMB Circular A–102, Attachment G–2, cannot serve as the basis for the disallowances in this case. We are satisfied, however, that the act itself expressly requires grant recipients to make and preserve appropriate accounting records, *see* 29 U.S.C. § 835(a)(1), and that it authorizes the Secretary to order sanctions, including repayment, if a recipient fails to comply with any provisions of the act or its regulations. *See* 29 U.S.C. § 816(d)(1). It seems abundantly clear, in the context of these statutory provisions, that the regulations relied upon by the Grant Officer and the ALJ are designed to implement these expressed recording and recoupment provisions, and that, therefore, they constitute an appropriate basis for the recovery of CETA funds granted to the City of Newark.

## V.

Because the Secretary's authority to recover misspent funds in this case was not barred by 29 U.S.C. § 1591(e), and because the administrative law judge's determination was supported substantial evidence, we affirm the final decision of the Secretary of Labor, dated July 27, 1992 in Department of Labor Case No. 85–CPA–28.